(March 20, 1908.)

## GEORGE KIMPTON, Respondent, v. STUDEBAKER BROS. CO., Appellant.

[94 Pac. 1039.]

CONTRACT NOTE—SELLER RETAINING TITLE—OTHER PROMISES—NON-NEGOTIABLE—TIME OF PAYMENT UNCERTAIN—VOLUNTARY PAYMENT—RECOVERY BACK.

1. A recital in a title-retaining note that the title to the property for which it is given shall remain in the payee and that he shall have the right to take possession of it whenever he may deem himself insecure, even before maturity of the note, renders such instrument non-negotiable under the provisions of secs. 1 and 5 of an act relating to negotiable instruments, approved March 10, 1903 (Sess. Laws 1903, p. 380).

2. Where money is voluntarily paid in satisfaction of an unjust or illegal claim, with full knowledge of the facts and without any fraud, mistake, duress or extortion, it cannot be recovered back by the payor.

3. *Held,* that the instrument sued on in this action is non-negotiable, and was subject to all the legal defenses by the maker which might have been interposed by him against it in the hands of the original payee.

(Syllabus by the court.)

APPEAL from the District Court of Fifth Judicial District for Bannock County. Hon. Alfred Budge, Judge.

Action to recover for personal property delivered to the defendant. Judgment for plaintiff. *Reversed.*

A. B. Redford, and Gray & Boyd, for Appellant.

Where a note contains any provisions other than for the unconditional payment of money, it is non-negotiable. (*Southbend Iron Works v. Paddock*, 37 Kan. 510, 15 Pac. 574.) And a maker can maintain any defense against an assignee that he might have maintained against an original party. (*Smith v. Marland*, 59 Iowa, 645, 13 N. W. 852; *Story v. Lamb*, 52 Mich. 525, 18 N. W. 249; *First Nat. Bank v. Carson*, 60 Mich. 432, 27 N. W. 589; *Dickerson v. Higgins*, 15 Okl. 588, 82 Pac. 649.)

Nixon was not an innocent purchaser under the evidence. He knew of the credit and that the price or value of the surrey and harness were deducted in arriving at the discount sum for which he bought the note.

Hawley, Puckett & Hawley, for Respondent, cite no authorities.

SULLIVAN, J.—This action was brought to recover the value of a surrey and set of harness, which it is alleged that plaintiff delivered to the defendant to be sold by it, and that defendant agreed to sell the same for the plaintiff for $135 or return the same to the plaintiff in case no sale was made; that the defendant sold said property but failed and neglected to pay the plaintiff for the same. The answer denies that the defendant received said personal property as alleged in the complaint, and denies that it agreed to sell the same for plaintiff for $135 or for any sum whatever, or that it agreed to return the same to the plaintiff on demand; denies that the defendant did sell said personal property, and denies that it had failed and neglected to pay plaintiff for the same; and further answering the defendant avers that on the 5th day of February, 1904, the plaintiff made and delivered to the defendant its certain promissory note, which is set forth in the answer, which note was a renewal of a similar note dated about two years prior to the date of the copy of the note set forth in the answer. Said note is as follows:

"$277.00.               Salt Lake City, Utah, Feb. 5, 1904.

"On or before the 1st day of December, 1904, for value received in No. 3 harness No. 130 Std., 4 spring 2-3 gear truck wheels, 1 No. 759 surrey and set No. 129 Har. hereafter called 'said property,' bought of Studebaker Bros. Co. of Utah, I or either of us promise to pay to the order of said company at its office in Salt Lake City, two hundred seventy-seven and no 100 dollars with 12 per cent interest per annum from date until after maturity, and if not paid after maturity the rate of interest shall thereafter be one per cent per month until paid, and reasonable attorney's fees if placed in the hands of an attorney for collection.

"The express condition of this transaction is that the title or ownership of 'said property' does not pass from said company until this note and interest shall have been paid in full, and the said company has full power to declare this note due and take possession of said property when it deems itself insecure, even before the maturity of this note; and it is further agreed by the makers hereof, that they will not sell or dispose of the said property except on the written order of said company. In case said company shall take possession of said property, it may at its pleasure sell the same at public or private sale without notice, and apply the proceeds on this note, or it may without sale indorse the true value of the 'said property' on this note and I or either of us, agree to pay on this note any balance due thereon after such endorsement, as damages and rental for 'said property,' as to this note we waive the right to exempt or claim as exempt, any property, real or personal we now own or may hereafter acquire, by virtue of any homestead or exemption law, now in force or that may hereafter be enacted. I agree to pay $20.00 on the 15th of each month until paid.

"Signed: GEORGE KIMPTON.
"JOHN HENRIE."

It is also averred in the answer that the property so purchased was for the use and benefit of the plaintiff Kimpton, and that John Henrie was only an accommodation indorser; that the plaintiff failed and neglected to pay said note or any

part thereof, and on June 6, 1904, the defendant, deeming itself insecure and no payment having been made on said note, repossessed itself of the harness mentioned in said note, and on June 13, 1904, said defendant, deeming itself insecure and not having received any payments on said note, repossessed itself of the surrey mentioned in said note; that the true value of said surrey at the time it was repossessed by defendant was $75, and the true value of the harness was $13, and that thereafter on November 23, 1904, defendant demanded payment in full on said note, but plaintiff failed and neglected to pay any part thereof, and that said note was by the defendant declared due and payable according to its terms; that on or about November 23, 1904, the defendant sold said note by indorsing the same "without recourse" to one S. M. Nixon for $160.30, by and with the consent and knowledge of the plaintiff.

Upon the issues thus made, the cause was tried by the court without a jury, and in its findings of fact the court found execution of said note as alleged, and further found that on April 1, 1904, the plaintiff voluntarily delivered to the defendant said surrey and harness, and that the defendant then and there agreed to sell the same for the plaintiff for the sum of $135, said sum to be indorsed upon said promissory note; that on or about June 1, 1904, the defendant sold said surrey and harness and indorsed upon said note the sum of $13 and neglected to indorse thereon the balance of $122; that on November 16, 1904, and before the maturity of said obligation, the defendant sold the same to said Nixon; that on August 24, 1905, the plaintiff paid to said Nixon the full amount of said obligation, including interest thereon at the rate of twelve per cent per annum, aggregating a sum of $341.06.

As a conclusion of law from the facts found, the court found that the plaintiff was entitled to judgment as prayed for in his complaint, and judgment was entered accordingly. A motion for a new trial was denied and this appeal is from said order and judgment.

The main questions involved in this case are the negotiability of said title-retaining contract or note, and whether the respondent was justified under the facts of this case in pay-

ing the full amount that appeared to be due on said contract upon its face to said Nixon, a purchaser thereof, and whether the evidence is sufficient to sustain the findings of fact. The following facts appear from the record: That in 1902, the respondent entered into a contract like the one above set forth, for the purchase of said personal property. The former contract not having been complied with, the one above set forth was taken in its place as a renewal thereof. About two years after said transaction, the respondent not having been paid anything on said contract, he delivered to the agent of the appellant said surrey and set of double harness, the value of which was to be applied on said contract. There is a conflict in the evidence as to the terms on which this property was returned to the appellant, but, under the contract the property belonged to the appellant, and under its provisions it might repossess itself of said property whenever it deemed itself insecure. But the effect of all the evidence clearly is that the value of said property was to have been indorsed on said contract. According to the evidence of the appellant, the value was agreed upon as follows: $13 for the set of double harness; $75 for the surrey, making a total of $88, while the evidence of the respondent is to the effect that the appellant was to sell said property for $135 and give him credit for that amount on said note. In our view of the case, however, the difference as to the value of the property will make no difference in the decision of this case. It appears that the agent of the appellant took possession of said property and indorsed on said note $13 claimed to be the value of said harness, but neglected to indorse the value of the surrey thereon. Upon the execution of the contract above set forth in place of the first contract, the appellant company had been crowding the respondent for payment for said property, and the agent of the company met the respondent in Pocatello, and, according to the agent's testimony, he went over the matter with the respondent and told him it must be paid; that he figured up the principal on the note and found there was a balance of $189 principal, and interest to the amount of $24 or $25, and there informed the respondent that unless he raised the money he

would take the goods from him, and gave him until the next day to make the payment. The respondent thereupon went away and the next morning one S. M. Nixon went to see the agent of the appellant at the Bannock Hotel. He informed said agent that the respondent had sent him to make some arrangements if he could with regard to this note, and that if he could purchase the note and purchase it right, he would take it up as the respondent was going to do some contract work for him. The appellant thereupon showed Nixon a copy of the note, and also informed him that there was an indorsement of $13 and another of $75 and also informed him that there had been paid on said note $13 and $75, making a total of $88, which, deducted from the total principal of $277, left a balance of $189 with interest. He there informed Nixon that he would let him have the note for $189, the balance of the principal due. Nixon replied that if he could not make twenty-five per cent on the deal, he would not take the note, for the reason that he had to wait to have the work done and take chances on getting it done. It was finally agreed that to the principal of $189 should be added the interest amounting to $24 or $25, and then discounted twenty-five per cent, leaving $160.30, which amount was paid by Mr. Nixon to the agent of the appellant for said note. It clearly appears from the record that Nixon knew that the $75 for the surrey should have been credited on said note and was deducted from the note at the time he purchased it, although it was not indorsed thereon through some carelessness or oversight of the bookkeeper of the appellant. The respondent himself testified that shortly after Nixon had bought the note he presented it to him for payment, and testified as follows: "I made no objection to the amount of the note claimed by Mr. Nixon, as the money received for the surrey and harness had never been credited on the note, and I made objection to the full amount of that note when Mr. Nixon presented it for payment. I afterwards paid this note to Mr. Nixon through my attorneys some time in November." He further testified that shortly after Nixon showed him the note he informed the appellant that he had failed to credit him for the surrey and testified: "I knew at

the time that I paid the note that the credit had not been given. I had my attorney, E. C. White, take up the note and then notify Studebaker Bros. Co. to dig up.'' The evidence clearly shows that Nixon purchased the note with full knowledge that the $75, the value of the surrey, had not been credited thereon, but that that amount was deducted at the time he purchased the note. It also clearly appears that the respondent knew all about the credits he was entitled to before he paid the note.

Then the question arises under those facts whether the respondent, having voluntarily paid more than he knew was due on said contract or note and more than the holder thereof knew was due thereon, can recover the same from the appellant. Under this question it will be necessary for us to determine, first, whether said retaining-contract or note is a negotiable instrument under an act of the legislature of this state entitled: ''An act relating to negotiable instruments (being an act to establish a law uniform with the laws of other states on that subject), approved March 10, 1903 (Sess. Laws 1903, p. 380).'' Sec. 5 of said act provides, among other things, as follows: ''An instrument which contains an order or promise to do an act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by a provision which: First. Authorizes the sale of collateral securities in case the instrument be not paid at maturity,'' etc. No collateral security is involved in this case, as the title of the property remained in the seller.

On an inspection of the instrument in question, it will be observed that its first provision is for the payment on or before December 7, 1904, of $277, with twelve per cent interest per annum from date until maturity, and a reasonable attorney's fee if placed in the hands of an attorney for collection. If this contract had ended there, it would have been a negotiable instrument. The other provision of said contract contains a covenant and promise to do certain acts in addition to the payment of money and the time of payment is uncertain, and it is therefore not negotiable under the provisions

of said sec. 5 of said act.  Under the provisions of said contract the appellant had full power to declare the money due thereon and take possession of said property whenever it deemed itself insecure ''even before the maturity of the note.'' The money provided for in said contract is not payable on demand or at a fixed or determinable future time as required by the third subdivision of sec. 1 of said act relating to negotiable instruments.  It also contains certain promises to do acts in addition to the payment of money, and is therefore clearly repugnant to the provisions of secs. 1 and 5 of said act.

In *Choate v. Stevens,* 116 Mich. 28, 74 N. W. 289, 43 L. R. A. 277, the court had under consideration the negotiability of a note which contained a clause stating that it was given for certain property, the title to which should not pass until the note was paid, and which was subject to be retaken in case of nonpayment of the note.  The court there held that said note was negotiable.  The note involved in that case is set forth in the opinion, and on examination it will be observed that it is not such an instrument as the one under consideration in the case at bar.  It does provide for the payment of the the money at a fixed time in the future, but it does not further contain a provision that the payee had the full power to declare said note due and take possession of the property whenever it deemed itself insecure ''even before the maturity of the note.''  To that case is attached an exhaustive note citing many authorities, many of them holding that instruments like the one under consideration are non-negotiable.

In *Union Stock Yards Nat. Bank v. Bolan, ante,* p. 87, 93 Pac. 508, this court held a promissory note non-negotiable which contained a stipulation whereby the sureties, guarantors, indorsers and maker waived notice of the granting of an extension of time for payment, etc., thus leaving the time of payment uncertain.  The title-retaining note sued on herein is non-negotiable, and was subject to all of the defenses and equities which the maker had against the original payee therein.  Said instrument being non-negotiable, the question next presented is whether the respondent, after having voluntarily paid more than was due thereon, could recover the same

from the appellant. In other words, should he have resisted payment to Nixon as assignee of the appellant so far as the credit for the value of said surrey is concerned? The doctrine is well settled that money voluntarily paid in satisfaction of an unjust or illegal demand with full knowledge of the facts and without any fraud, duress or extortion, cannot afterward be recovered by the payor. Both Nixon and the respondent knew all of the facts; Nixon knew he was not entitled to recover the amount on said note represented by the value of the surrey, as it was deducted at the time he purchased said non-negotiable instrument, and the respondent knew that he was entitled to credit thereon for the value of said surrey. He voluntarily paid it when he knew it was not due on said instrument. Under the law, therefore, he cannot recover it from the appellant, as it was not paid under fraud, mistake, duress or extortion.

Said note being non-negotiable, although assigned or transferred before maturity and for value, was subject to all the legal defenses which might have been interposed against it in the hands of the original payor. (*Dickerson v. Higgins,* 15 Okl. 588, 82 Pac. 649; *Warren v. Stoddart,* 6 Ida. 692, 59 Pac. 540.)

As touching upon this question, see *Wilcox v. Cheviott,* 92 Me. 239, 42 Atl. 403; *Wessel v. Johnson L. & M. Co.,* 3 S. D. 660, 44 Am. St. Rep. 529, 54 N. W. 922; *Manning v. Poling,* 114 Iowa, 20, 86 N. W. 30; *United States v. Edmondston,* 181 U. S. 497, 21 Sup. Ct. 718, 45 L. ed. 971.

In *Mays v. City of Cincinnati,* 1 Ohio St. 268, touching upon the question under consideration, the court said: "The reason of the rule and its propriety are quite obvious when applied to a case of payment upon a mere demand of money unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. . . . . When he [the debtor] can only be reached by a proceeding at law he is bound to make

his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence and afterward sue to recover back.''

It appears from the evidence that the respondent was anxious and eager to pay more than was due on said note to Nixon, and to bring suit against the defendant for the value of said harness and surrey. Under the well-established rule of law, a voluntary payment made under the facts of this case cannot be recovered back. The judgment of the court must be reversed and the cause remanded, with instructions to dismiss the action. Costs are awarded to appellant.

Ailshie, C. J., and Stewart, J., concur.