(February 5, 1909.)

## J. E. TARR and ANNA A. TARR, Appellants, v. WESTERN LOAN AND SAVINGS COMPANY, a Corporation, Respondent.

[99 Pac. 1049.]

FOREIGN CORPORATIONS—COMPLIANCE WITH LAW BEFORE DOING BUSINESS IN THE STATE—ESTOPPEL TO PLEAD NONCOMPLIANCE—VALIDITY OF STATUTE IMPOSING LIABILITIES ON FOREIGN CORPORATIONS.

    1. Where a foreign corporation at the time it entered into a contract had filed its designation of agent and principal place of business as required by statute, and had filed a copy of its articles of incorporation with the secretary of state of the state of Idaho, duly certified to by the secretary of state of the territory where the corporation was organized, but such copy was not certified to by the county recorder of any county of this state, and no certified copy of its articles of incorporation had been filed with the recorder of any county of this state; *held*, that the corporation had failed to substantially comply with the requirements of the statute, and that it therefore cannot maintain an action to enforce any contract entered into by it while thus in default.

2. The statute of this state requiring foreign corporations to do and perform certain acts before commencing to do business in this state, is mandatory, and must receive a substantial compliance before such corporations will be allowed to maintain their actions in this state to enforce contracts entered into prior to their compliance with the law.

3. The fact that sec. 2653, Rev. Stat. of 1887, as amended by act of March 10, 1903, imposed additional requirements on foreign corporations that were already doing business in this state under the provisions of the statute before amendment, is not violative of any contract right, for the reason that substantially the same duties are imposed on like domestic corporations, and there is therefore no discrimination against foreign corporations that had previously complied with the statute and placed themselves on an equal footing with like domestic corporations.

4. The fact that a party to a contract with a noncomplying foreign corporation has made numerous payments of interest installments before being sued, and without objection on the ground of the noncompliance of the corporation, does not constitute a waiver of the right to plead the corporation's failure to comply with the statute and constitution of this state in order to entitle it to do business within the state.

5. In a case where a person has secured a loan from a noncomplying foreign corporation and has failed to pay the same as provided for by his contract, even though the corporation has failed to qualify as provided by law in order to entitle it to do business in this state, the borrower will not be heard in a court of equity to admit the contract and the indebtedness and at the same time prosecute his action to cancel the mortgage given to secure the indebtedness, simply because the corporation failed to comply with the statute in qualifying to do business.

(Syllabus by the court.)

APPEAL from the District Court of the Sixth Judicial District for the County of Bingham. Hon. J. M. Stevens, Judge.

Action by the plaintiffs to have a mortgage declared void and canceled. Cross-complaint by defendant to foreclose the mortgage and answer by plaintiffs to the cross-complaint. Judgment for defendant and plaintiffs appeal. *Reversed.*

Hansbrough & Gagon, for Appellants.

Where a statute of a state provides that a foreign corporation shall not do business within the state except upon com-

pliance with certain conditions, and such a corporation does business in the state in violation of the statute, and, through the business so done, a contract accrues to it which would otherwise be enforceable in the courts of the state, the corporation cannot, because of the statutory prohibition, maintain an action upon such contract in the courts of the state. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; 19 Cyc. 1289, 1290; *Hanchey v. Southern Home Bldg. Assn.,* 140 Ala. 245, 37 South. 272; *Central Mfg. Co. v. Briggs,* 106 Ill. App. 417; *Cassaday v. American Ins. Co.,* 72 Ind. 95; *Seamans v. Temple Co.,* 105 Mich. 400, 55 Am. St. Rep. 457, 63 N. W. 408, 28 L. R. A. 430; *Sherman Nursery Co. v. Aughenbaugh,* 93 Minn. 201, 100 N. W. 1101; *Ehrhardt v. Robertson,* 78 Mo. App. 404; *Commonwealth Mut. F. Ins. Co. v. Hayden,* 60 Neb. 636, 83 Am. St. Rep. 545, 83 N. W. 922; *Haverill Ins. Co. v. Prescott,* 2 N. H. 547, 80 Am. Dec. 123; *South Amboy T. C. Co. v. Poersehke,* 90 N. Y. Supp. 333, 45 Misc. Rep. 358; *Commonwealth Mut. F. Ins. Co. v. Edwards,* 124 N. C. 116, 32 S. E. 404; *Bank of British Columbia v. Page,* 6 Or. 431; *Wolf v. Lancaster,* 70 N. J. L. 201, 56 Atl. 172; *Tabor v. Interstate Bldg. Co.,* 91 Tex. 92, 40 S. W. 954; *Booth & Co. v. Weigand,* 28 Utah, 372, 79 Pac. 570; *Lycoming F. Ins. Co. v. Wright,* 55 Vt. 526; *Seamans v. Zimmerman,* 91 Iowa, 363, 59 N. W. 290, and many others.)

Whether it shall be held that the contract is void, invalid or unenforceable in the courts is immaterial, as it amounts to one and the same thing, so far as the enforcement of the contract is concerned.   The general rule of law is, that a contract made in violation of the statute is void, and when a party cannot establish his cause of action without relying upon an illegal contract, he cannot recover. (*Miller v. Ammon,* 145 U. S. 421, 12 Sup. Ct. 884, 36 L. ed. 759; *Penn v. Bornman,* 102 Ill. 523; *Alexander v. O'Donnell,* 12 Kan. 608; *Gunter v. Leckey,* 30 Ala. 591; *Kennedy v. Cochrane,* 65 Me. 594; *Pangborn v. Westlake,* 36 Iowa, 546-549.)

The defendant having failed to comply with the laws of 1903, by making all of the filings required by that law before doing business in the state, it was in default, and the judg-

ment should have been in favor of the plaintiffs, and the note and mortgage should have been canceled. (*Kiesel v. Bybee et al.* (Idaho), 95 Pac. 20; *Katz v. Herrick, supra; Hanchey v. Southern Home B. & L. Assn.,* 140 Ala. 245, 36 South. 272.)

Hasbrouck & St. Clair, for Respondent.

In this case the respondent had made such filings prior to the taking of the mortgage as really protected all people doing business with it. The respondent was not then a "tramp, predatory and rapacious foreign corporation"—in one place one day, in another the next day, and out of the state, or where it could not be found by the processes of the courts of Idaho on the third day; but for eight years before taking of this mortgage, and ever since, the respondent has had a legally designated agent in this state, upon whom process might be served, and had the same on file in the proper offices. For twelve years it has had a certified copy of its articles of incorporation on file with the secretary of state of this state, though it had not, when this mortgage was given, filed a copy of its articles with the recorder of any county of Idaho; nor was the copy filed twelve years ago with the secretary of state, certified by the recorder of any county of Idaho; but what real difference could this technical failure have upon the rights of Idaho people? (*Jordan v. Western Union Tel. Co.,* 69 Kan. 140, 76 Pac. 396; *Nelson Bennett Co. v. Twin Falls etc. Co.,* 14 Ida. 5, 93 Pac. 789; *Kiesel v. Bybee* (Idaho), 95 Pac. 20.)

It does not appear from the journal that the 1903 amendment to sec. 2653 was constitutionally passed, or that on the final passage the bill was read at length, section by section, as required by the constitution. (*Cohn v. Kingsley,* 5 Ida. 416, 49 Pac. 985, 38 L. R. A. 74; *Brown v. Collister,* 5 Ida. 589, 51 Pac. 417.)

AILSHIE, J.—This action was commenced by the plaintiffs for the purpose of obtaining a decree canceling a certain

mortgage of record and declaring the same null and void. The defendant filed its answer and also a cross-complaint seeking a foreclosure of the mortgage. The plaintiffs answered the defendant's cross-complaint and set up the defense that the defendant is, and was at the time the contract was made and entered into, a foreign corporation doing business in this state, and that at the time the contract was made and entered into the corporation had not complied with the constitution and statutes of this state with reference to filing a designation of its agent and certified copies of its articles of incorporation. The case went to trial and resulted in a judgment of foreclosure in favor of the defendant, from which plaintiffs have appealed. The decision in this case turns upon the question as to whether or not the defendant corporation had complied with the constitution and statutes of this state governing and regulating foreign corporations doing business in this state. The contract involved was entered into between the appellants and respondent on March 11, 1904, at Bingham county, this state. The facts as to the respondent's compliance with the constitution and statutes of the state are substantially as follows:

On October 10, 1896, the defendant filed in the office of the clerk of the district court of Ada county, and also with the secretary of state of the state of Idaho, a designation in writing of Ada county as the county of its principal place of business in this state, and a designation of a resident of Ada county as its statutory agent upon whom process might be served. On the same day the defendant filed in the office of the secretary of state a copy of its articles of incorporation, certified to by the secretary of state of the territory of Utah. These constitute the only acts performed by the corporation in compliance with the laws of this state prior to entering into this contract. Subsequent to the execution of the contract, the company did certain acts in compliance with the statute as follows: On December 16, 1904, it filed with the recorder of Ada county a certified copy of its articles of incorporation, and on the same date filed a duly certified copy of its articles of incorporation with the secretary of state. Thereafter, and

on February 14, 1907, it filed with the clerk of the district court in and for Bannock county a written designation of an agent on whom service might be made, and on the 16th day of the same month filed a like designation in the office of the secretary of state, and on February 14, 1907, filed with the recorder of Bannock county a duly certified copy of its articles of incorporation, and on the 16th day of the same month filed a duly certified copy of its articles of incorporation with the secretary of state.

It will be seen, therefore, that at the time of entering into this contract on March 11, 1904, the corporation had failed to comply with the statutes of this state in the following respects: First, it had not filed with the recorder of Ada county, or with the recorder of any other county of this state, a copy of its articles of incorporation duly certified to by the secretary of state of the state of Utah, that being the state in which the corporation was organized and had its legal existence. Second, it had failed to have the copy of its articles of incorporation that was on file in the office of the secretary of state of the state of Idaho duly certified by the recorder of Ada county or by the recorder of any other county of the state.

The statute, sec. 2653, Rev. Stat., as amended by act of March 10, 1903 (Sess. Laws 1903, p. 49), provided that every foreign corporation doing business in this state must, before doing any business in this state, file with the county recorder of the county in which is designated its principal place of business a copy of its articles of incorporation duly certified to by the secretary of state of the state in which such corporation was organized, and a copy of such articles of incorporation duly certified by such county recorder, with the secretary of state, paying to the latter the same fees as are provided by law to be paid for filing original articles of incorporation, and must designate some person in the county in which the principal place of business of such corporation is conducted, upon whom process issued by authority of or under any law of this state may be served, and must file such designation in the office of the secretary of state and in the

office of the clerk of the district court for such county. It is also provided by the same act that "no contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filings as first herein provided, can be sued upon or be enforced in any court of this state by such corporation." This statute, which is merely an amplification of the provisions of section 10, art. 11 of the constitution, has been passed upon and construed by this court in several cases. (*Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873; *Valley Lumber Co. v. Driessel*, 13 Ida. 673, 93 Pac. 765, 15 L. R. A., N. S., 299; *Valley Lumber Co. v. Nickerson*, 13 Ida. 682, 93 Pac. 24; *Bismark Mt. Gold Min. Co. v. Sunbeam Gold Co.*, 14 Ida. 516, 95 Pac. 14; *War Eagle Con. Min. Co. v. Dickie*, 14 Ida. 534, 94 Pac. 1034; *Kimpton v. Studebaker Bros. Co.*, 14 Ida. 552, 125 Am. St. Rep. 185, 94 Pac. 1039; *Weiser Nat. Bank v. Jeffreys*, 14 Ida. 659, 95 Pac. 23; *Zimmerman v. Bradford-Kennedy Co.*, 14 Ida. 681, 95 Pac. 825.) We have repeatedly held that the constitutional and statutory provisions with reference to the qualifications of a foreign corporation to do business in this state are mandatory, and that they must be complied with in order to enable such corporation to maintain an action in the courts of this state to enforce its contracts. The only question of importance here is this: Do the acts and things done and performed by the respondent corporation constitute a substantial compliance with the statute? It must be conceded that the corporation had complied with the statute in the designation of an agent on whom process might be served. On the other hand, there was no attempt at compliance with the requirement for filing a certified copy of its articles of incorporation with the recorder of the county in which its principal place of business was situated, and a copy certified by such recorder with the secretary of state. The fact that the copy filed with the secretary of state was certified to by the secretary of the territory of Utah instead of being certified by the county recorder of the county in which its principal place of business was situated in this state might possibly be excused if the company had in fact filed a properly certified copy with the

county recorder. The latter act had not been performed. The filing of a certified copy with the county recorder is a substantial requirement of the statute. It was wholly neglected, and no attempt was made to comply therewith. The litigant or person with whom the company is contracting has a right to go to the recorder's office of the county designated as its principal place of business and there find a certified copy of its articles of incorporation, as well as a notice designating its statutory agent on whom service of process may be had.

Respondent has placed a great deal of reliance on the case of *Kiesel v. Bybee*, 14 Ida. 670, 93 Pac. 765, 15 L. R. A., N. S., 299, wherein this court held that a "foreign corporation that had complied with the law prior to its amendment will be held to have substantially complied with the amendment law if, subsequent to the passage of the act of 1903, it performs all the additional acts and things required by the latter statute that were not required by sec. 2653, Rev. Stat., prior to the amendment." We still adhere to the doctrine there announced, and if it were true in this case that, prior to the amendment of 1903 the respondent had, in fact, filed certified copies of its articles of incorporation with the county recorder and the secretary of state as subsequently required by the amendatory act, we would have no hesitancy in holding that it had substantially complied with the statute and was entitled to maintain its action. That was not done in this case, however, and we are forced to hold that defendant is not in a position to maintain its action on this contract.

It is further argued by respondent that since this corporation had complied with the statute as it existed prior to the act of 1903, and was at that time lawfully doing business within the state, it was not within the power of the legislature to subsequently add additional requirements in order for it to continue to do business. It is insisted that under the provisions of sec. 2653, Rev. Stat. of 1887, it was provided that upon a foreign corporation complying with the terms of that statute, it should have "all the rights and privileges of like domestic corporations." In support of this contention coun-

sel cites the case of *American Smelting & Refining Co. v. Lindsley,* 204 U. S. 103, 27 Sup. Ct. 198, 51 L. ed. 393. In that case the supreme court of the United States, on writ of error to the supreme court of Colorado, held that: "A provision in a statute of this nature subjecting a foreign corporation to all the liabilities, etc., of a domestic one of like character must mean that it shall not be subjected to any greater liabilities than are imposed upon such domestic corporation. The power to impose different liabilities was with the state at the outset. It could make them greater or less than in case of a domestic corporation, or it could make them the same. Having the general power to do as it pleased, when it enacted that the foreign corporation, upon coming in the state, should be subjected to all the liabilities of domestic corporations, it amounted to the same thing as if the statute had said the foreign corporations should be subjected to the same liabilities." The rule there announced is not applicable to the case under consideration, for the reason that the requirements imposed upon foreign corporations by sec. 2653, Rev. Stat., as amended by the act of March 10, 1903, are substantially the same as are imposed upon like domestic corporations. Sec. 2719 of the Rev. Codes, which was sec. 2584 of the Rev. Stat. of 1887, requires that all domestic corporations shall file their articles of incorporation with the county recorder of the county in which the principal place of business of the company is to be transacted, and a copy thereof certified by the county recorder with the secretary of state. The incorporators are also required to pay certain fees to the secretary of state. Sec. 2653, Rev. Stat. of 1887, as amended by act of 1903, requires a foreign corporation to pay to the secretary of state the same fees as are required to be paid by like domestic corporations. So it will be seen that the exactions made of foreign corporations by this statute are not different from those made of like domestic corporations, and for that reason the American Smelting and Refining Company case, *supra,* is not in point here.

It is further contended by the respondent that since it affirmatively appears in this case that appellants had paid

twelve interest installments on the contract sued upon, they had therefore waived their right to raise the question of respondent's noncompliance with the statute and are now estopped from so doing. That position is not well founded.

The making of these interest payments, or any other payments on the contract, could not amount to an estoppel. The fact that the appellants made payments on the contract did not place the respondent in any worse or more unfavorable position than it was in before the making of the payments. On the contrary, the making of the payments inured to the benefit of the corporation and placed it in a better position than it was in prior thereto. The making of such payments did not cause the corporation to change its conduct toward appellants or assume any course of conduct prejudicial to its interests.

The judgment in this case must be reversed, upon the grounds that the respondent failed to establish that at the time of entering into this contract it had substantially complied with the statute governing foreign corporations doing business in this state. In reversing this judgment it is necessary for us to make some observations as to the condition of the pleadings in this action. In the first place, the appellants filed their complaint praying for a cancellation of the mortgage on the ground that it was void because of the noncompliance of the defendant corporation with the statute. That kind of action cannot be maintained by the appellants. They cannot be heard to come into a court of equity admitting the receipt of the money and the indebtedness and asking for a cancellation of the mortgage merely on account of the noncompliance by the corporation with the foreign corporation statutes of this state. Those who seek equity must first do equity. Besides, this court has held in at least two cases that such contracts are not absolutely *void*, but that the corporation making such contracts is left without a remedy. (*Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873; *War Eagle Con. Min. Co. v. Dickie*, 14 Ida. 534, 94 Pac. 1034.) The appellants' complaint praying for a cancellation of the mortgage should be dismissed. On the other hand, appellants had a perfect right

under the statutes and repeated decisions of this court, to plead in defense of the action to foreclose the corporation's noncompliance with the statute.

The judgment is reversed, with direction that if the respondent, cross-complainant in the court below, desires a new trial, it be granted, and appellants' complaint for cancellation of the mortgage will be dismissed. Costs awarded in favor of appellants.

Stewart, J., concurs.

(February 26, 1909.)

### ON PETITION FOR REHEARING.

6. Sec. 15, art. III of the constitution, requires that a bill shall not become a law unless the same shall have been read on three several days in each House previous to the final vote thereon, and also provides that in case of urgency, two-thirds of the House, where such bill is pending, may, upon a vote of the ayes and nays, dispense with this provision. This provision of the constitution applies alike to amendments as to the original bill, and the reading of amendments on three several days may be dispensed with in like manner.

7. Where the journal record of a bill shows that it was read the first and second time on different days, and after the second reading amendments were adopted, the first and second reading of which on different days was dispensed with under the constitution, and the amendments were read a first and second time on the same day, and printed, and the bill as amended was thereafter read at length section by section and the yea and nay vote taken thereon and entered upon the journal, it is a compliance with the provisions of sec. 15, art. III of the constitution.

8. While sec. 15, art. III, of the constitution requires that a bill on its final passage shall be "read at length, section by section," yet if the record shows that the bill was read "in full," it shows a substantial compliance with this provision of the constitution. To "read in full" means to read from the beginning to the end without abridgment or omission, and if so, the bill is read at length, section by section.

(Syllabus by the court.)

STEWART, J.—A petition for a rehearing has been filed in this case, and presents one question which we deem worthy

of consideration. It is contended by respondent that the original opinion failed to pass upon the constitutionality of the amendment to sec. 2653, Rev. Stat., as amended by an act approved March 10, 1903. We did not discuss this question in the original opinion for the reason that counsel did not argue the question upon oral argument, and upon examination we were convinced that there was nothing in the contention; but inasmuch as counsel in the petition for rehearing has urged the question again, we have deemed it proper to consider the matter. The contention made by counsel for respondent with reference to this amendment is that it was not passed in accordance with the provisions of sec. 15, art. III of the constitution.

There is no complaint but that the bill was regularly passed in the Senate. The objections made relate to the course of the bill in the House. The legislative journal of the House shows that House Bill 45 was introduced by Pyke on January 22, 1903, and on that day was read the first time in full. On January 23d House Bill 45 was read the second time in full and referred to the printing committee. On January 26th the printing committee reported that the bill had been printed and the report was adopted and the bill referred to the committee on railroads and corporations. On February 11th the committee on railroads and corporations reported the bill to the House with recommendation that it pass; and on the same day motion was made that the rules of the House be suspended and the provisions of sec. 15, art. III of the constitution, requiring the reading of bills on three several days, be dispensed with, and that the amendments to House Bill 45 be read first and second time and ordered printed. This motion prevailed and it was so ordered. On February 12th the committee on printing reported that the amendments to House Bill 45 had been printed. On the same day House Bill 45 with amendments was referred to the engrossing committee and ordered engrossed. On February 13th House Bill 45 was reported correctly engrossed. On February 19th House Bill 45 was read third time "in full" and placed on final passage and upon roll-call passed. The record of this

bill on February 11th is challenged by counsel for respondent, and the contention is made that it does not show that the amendments were read on three several days or that the bill as amended was read on three several days. The record discloses that House Bill 45 had its first reading on January 22d; second reading January 23d. On March 11th amendments were proposed, the provisions of the constitution with reference to the first and second reading of which were suspended. This motion was carried and it was so ordered.

From this it clearly appears that the bill had a first and second reading before the amendments were proposed; that the provision of the constitution, as to the first and second reading of the amendments on three several days, was suspended. This was equivalent to the first and second reading of the amendments on different days, providing, of course, the amendments were read upon the day of suspension.

We think the record sufficiently indicates that the amendments had their first and second reading on the same day, to wit, the day the provision of the constitution was suspended. If the bill before amendment was read first and second time on different days and the amendments were read upon different days, or the provisions of the constitution with reference to such reading were suspended, and both readings occurred upon the same day and the amendments were adopted, then up to that time the constitution would seem to have been complied with.

Sec. 15, art. III of the constitution, provides:

"No law shall be passed except by bill, nor shall any bill be put upon its final passage until the same, with the amendments thereto, shall have been printed for the use of the members; nor shall any bill become a law unless the same shall have been read on three several days in each house previous to the final vote thereon: *Provided*, In case of urgency, two-thirds of the house where such bill may be pending may, upon a vote of the yeas and nays, dispense with this provision. On the final passage of all bills they shall be read at length, section by section, and the vote shall be by yeas and nays

upon each bill separately, and shall be entered upon the journal.''

If, under the provisions of this section of the constitution, the reading of a bill on three several days may be dispensed with upon a vote of two-thirds of the House where the bill is pending, we can see no reason why the reading of amendments on three several days may not also be suspended; and if the first and second reading of a bill may take place on the same day by a vote suspending the provisions of the constitution, the same is certainly true of amendments to the bill. If this construction be correct, then it clearly appears from the record in this case that the bill and all amendments thereto were read on separate days or the provisions of the constitution, with reference to such readings, suspended, and that the bill and amendments pursued the course required by the constitution up to the time the bill was engrossed. The engrossment included the bill with the amendments and after engrossment the bill was read a third time ''in full'' and passed by a yea and nay vote which was entered upon the journal.

It is, however, argued by counsel for respondent that the record, read a third time ''in full,'' is not equivalent to reading the bill ''at length, section by section.'' We are unable, however, to see any substantial difference in the record with reference to the reading of this bill and the requirements of the constitution. If the bill was read in full, it must have been read at length, section by section. ''Read in full'' means to read from the beginning to the end without abridgment or omission; if so, the bill must have been read section by section: Standard Dictionary, p. 731. While it is better in recording the history of a bill in the legislature to follow the language of the constitution, yet where language is used which in its common acceptation means the same thing, it indicates a substantial compliance with the constitutional provisions. So, in this case we are clearly of the opinion that the amendment to sec. 2653, Rev. Stat., approved March 10, 1903, was adopted in accordance with the provisions of the

constitution of this state and the act for that reason is not unconstitutional.

There are some other questions argued in the petition for rehearing which in our judgment have been fully and carefully considered in the original opinion. After examining the record in this case again, we are satisfied that the original opinion is correct and the judgment must be reversed.

Ailshie, J., concurs.