Dear Representative Dank,
¶ 0 This office has received your request for an Attorney General's Opinion addressing the following questions:
1. Does the provision in Article V, § 34, of the OklahomaConstitution stating, "no bill shall become a law unless, on itsfinal passage, it be read at length" require that each word inthe title and body of proposed legislation be recited before themembership of each legislative house before the bill is passed?
 2. Does any provision of the Oklahoma Constitution alloweither house of the Legislature to disregard thereading-at-length requirement found at Article V, § 34?
 3. If reading at length cannot be waived, what is the effecton enacted legislation if a bill is not read at length on finalpassage?
 4. Does failure to read a bill at length before passageviolate any rights of Oklahoma citizens?
¶ 1 The Oklahoma Constitution sets out steps in the legislative process. Two of those steps are important for answering your questions. The first deals with the reading of a bill before
legislators vote on it:
 Every bill shall be read on three different days in each House, and no bill shall become a law unless, on its final passage, it be read at length, and no law shall be passed unless upon a vote of a majority of all the members elected to each House in favor of such law; and the question, upon final passage, shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal.
Okla. Const. art. V, § 34 (emphasis added).
¶ 2 The second section deals with the reading of a bill after
it has been approved by the Legislature:
 The presiding officer of each House shall, in the presence of the House over which he presides, sign all bills and joint resolutions passed by the Legislature, immediately after the same shall have been publicly read at length, and the fact of reading and signing shall be entered upon the journal, but the reading at length may be dispensed with by a two-thirds vote of a quorum present, which vote, by yeas and nays, shall also be entered upon the journal.
Okla. Const. art. V, § 35 (emphasis added).
 LEGISLATURE CANNOT WAIVE READING REQUIREMENT
¶ 3 Immediately, it is clear that constitutional drafters did not provide for the waiver of the pre-passage reading requirement although they did so for the post-enactment reading requirement. The answer to your second question clearly is no, the Legislature may not waive the reading requirement prior to passage of an act.
 "READ AT LENGTH" DEFINED
¶ 4 Article V, § 34 of the Oklahoma Constitution requires each bill to be read at length prior to final passage. The Constitution does not define the term, but the Oklahoma Supreme Court has said read at length means "read publicly in full."Atchison, Topeka Santa Fe Railway Co. v. State, 113 P. 921,926 (Okla. 1911). The Court did not further define read infull, but the sense of the opinion appears to be that the bill will be read from beginning to end. Id. While Oklahoma cases do not define read in full, the Supreme Court of Idaho, considering a similar constitutional provision, has said the term means "to read from beginning to the end without abridgement or omission." Tarr v. Western Loan Savings Co., 99 P. 1049, 1053
(Idaho 1909). California's highest court also has interpreted a constitutional provision requiring bills to be read at length.
That court said the phrase means to read every word of the bill, from beginning to end, without omission. Weill v. Kenfield,54 Cal. 111, 115 (1880).
¶ 5 In Oklahoma, "[w]ords used in any statute are to be understood in their ordinary sense." 25 O.S. 1991, § 1[25-1].
Constitutional language, likewise, should be given its plain and ordinary meaning when the drafters have not otherwise defined it.Lockhart v. Loosen, 943 P. 2d 1074, 1078 (Okla. 1997). The verbread has many definitions. Relevant to this inquiry, the word means "to look at or otherwise scan . . . with mental formulation of the words or sentences represented," "to understand the meaning and grasp the full sense of . . . either with or without vocal reproduction," "to see or find in printed or written form or in some similar form," "to deliver aloud by or as if by reading." Webster's Third New International Dictionary 1889 (1993).
¶ 6 One of these definitions indicates an oral presentation. The actions contemplated by the other definitions may be accomplished either through reading aloud or reading silently. The appropriate definition must be discerned by examining the whole constitutional provision for the framer's intent.Sullivant v. City of Oklahoma City, 940 P. 2d 220, 224 (Okla. 1997).
¶ 7 In discerning that intent, a constitutional provision will receive a broader construction than the same terminology in a statute. Scribner v. State, 465, 132 P. 933, 934 (Okla. 1913). The constitutional provision must be construed in harmony with common sense and reason. Cowart v. Piper Aircraft Corporation,665 P. 2d 315, 317 (Okla. 1983).
¶ 8 Section 34 of Article V merely requires each bill to be read at length, while Section 35 requires each bill to be "publicly" read at length. The use of the term publicly in the second section may indicate an intention for an oral reading after passage, while absence of the term in the first section may negate the need for such an oral reading before passage.Publicly means "in public . . . openly." Webster's Third New International Dictionary 1836 (1993). To act in public means to act in "a place accessible or visible to all members of the community." Id. The Legislature may, if it desires, close its meetings to public view. See 25 O.S. Supp. 1998, § 304[25-304](1). It may, therefore, consider legislation out of public hearing. The import of the word publicly is that Legislature may not, however, have the reading of the bill after passage conducted in private. Publicly does not connote, by itself, oral or silent reading. The use of the word does not solve the question of oral versus silent reading.
¶ 9 Unlike fourteen states, Oklahoma does not have a constitutional requirement for each bill to be printed and distributed to legislators before a vote.[1] It would be possible, therefore, for a legislative vote to occur before printed copies of the bill are available to members. Seventeen states have bill-reading requirements similar to Oklahoma's and like Oklahoma have no printing or distribution mandate.[2]
Courts in those states have said reasons for the reading requirement include ensuring legislators know what they are passing and facilitating informed deliberation. See, e.g., Statev. A.L.I.V.E. Voluntary, 606 P. 2d 769, 772 (Alaska 1980) andCasey v. Southern Baptist Hospital, 526 So. 2d 1332, 1336
(La.Ct.App. 1988). In addition, during an impeachment proceeding, the supreme court of the state from which Oklahoma copied its reading requirement said another reason for the mandate is to prevent hijacking of the legislative process by fraud or surprise. State v. Buckley, 54 Ala. 599, 612 (1875).
¶ 10 If the reading requirement is understood solely in light of the drafters' decision not to include a bill-printing-and-distribution requirement, then the reading must occur orally before each assembled house so legislators may know the bill's provisions before voting.
¶ 11 The key to understanding a constitutional provision, however, is found in the evil that provision was designed to remedy. De Hasque v. Atchison, Topeka Santa Fe Railway Co.,173 P. 78 (Okla. 1918). As previously stated, the evils the framers sought to avoid were uninformed deliberation, surprise, and fraud in the legislative process. That result was accomplished by providing the means for each legislator to know exactly what was in a bill — that mechanism is reading.
¶ 12 This prophylactic provision was drafted almost a century ago, when use of Linotype machines, manual page set-up, lead printing plates, and inked-roller presses made printing considerably slower and more cumbersome than duplication is today with electronic word processing, computerized page layout, and photocopy machines. The advent of personal computer networks giving instantaneous access to documents has increased the speed of information sharing even more. In 1907, a requirement for each bill to be read orally to each assembled house was the quickest and most efficient means to ensure all members knew the legislation's content before voting. Today, technology makes such a provision archaic and perhaps even inefficient. At the dawn of the twenty-first century, the same purpose of informing every member of the Legislature about the provisions of a bill can be met by providing each legislator with his or her own paper or electronic copy of the ultimate bill to read before final passage.
¶ 13 A constitution is not a static document; it is to be understood dynamically because it is "intended to endure for ages." Juilliard v. Greenman (The Legal Tender Cases),110 U.S. 421, 439 (1884). In accomplishing such an understanding, interpreters must recognize that a constitution's drafters could not know the "minute distinctions which arise in the progress of a nation." Bank of the United States v. Deveaux, 9 U.S. (5
Cranch) 61, 87 (1809). Instead, later generations must adapt the constitution's language to that progress without violating the document's underlying intent. Id.
¶ 14 This adaptability is seen in parliamentary history. The practice of reading a legislative bill three times before passage comes from the English Parliament, where this procedure was well established a century before Columbus sailed to the New World. For hundreds of years, the entire bill was read aloud by parliamentary clerks, but the practice has been discontinued with the advent of modern printing making the contents available to legislators, although the official requirement for three readings has been retained. Darwin Patnode, A History Of Parliamentary Procedure 28-29 (3d ed. 1982).
¶ 15 Therefore, to read a bill at length, as contemplated by the Oklahoma Constitution, means either to recite orally each and every word of the legislation from beginning to end before a meeting of the house considering the proposal or to provide each legislator a copy of the final bill to read prior to the vote on final passage.[3]
 ENROLLED BILL CANNOT BE ATTACKED FOR FAILURE TO READ
¶ 16 When a bill is enrolled, signed by the presiding officers of the Legislature, approved by the Governor, and filed with the Secretary of State, the court will not allow an attack on the statute for the Legislature's failure to comply with the reading requirement. Phelps v. Childers, 89 P. 2d 782, 789 (Okla. 1939). Failure to read a bill at length, therefore, will not affect the enacted measure.
¶ 17 This is not to say that no safeguards exist to ensure legislative procedures are followed as required by the State Constitution. For example if enforcement were required, an individual legislator could raise the issue by a point of order or other procedure provided by legislative rules.
 NO RIGHTS VIOLATED BY FAILURE TO READ
¶ 18 The Oklahoma and Federal Constitutions protect a plethora of rights, most of which have no connection to the issue at hand. The rights that might apply are equal protection of the laws,[4] the guarantee of a republican form of government,[5] and the guarantee of due process.[6]
¶ 19 The equal protection guarantee's function is "to measure the validity of classifications created by state laws." Parhamv. Hughes, 441 U.S. 347, 358 (1979). Legislative compliance or noncompliance with the reading provision does not create classifications; therefore, the equal protection provisions are not implicated.
¶ 20 In a case dealing with alleged legislative failure to comply with bill reading requirements, the United States Supreme Court said the guarantee of a republican form of government did not come into play because the distinguishing feature of a republican form of government is the people's right to choose officers for enactment of laws and administration of government. This feature was not affected by the reading requirement. Duncanv. McCall, 139 U.S. 449, 461 (1891). Furthermore, if the republican guarantee were affected, the question would have to be resolved by Congress rather than by the courts because the issue is not justiciable. State of Ohio v. Akron Metropolitan ParkDistrict, 281 U.S. 74, 79-80 (1930).
¶ 21 The constitutional guarantee of procedural due process requires notice and an opportunity to be heard by an impartial tribunal before a person is deprived of life, liberty, or property. Powell v. Alabama, 287 U.S. 45, 68 (1932). This procedural due process does not apply to the consideration of legislation. Bi-Metallic Investment Company v. State Board ofEqualization, 239 U.S. 441, 445 (1915).
¶ 22 Generally, substantive due process concerns questions surrounding the rational basis for legislation rather than procedure. See, e.g., Jeffries v. Turkey Run Consolidated SchoolDistrict, 492 F. 2d 1, 3-4 (7th Cir. 1974). Whether a bill is read at length before final passage is a procedural matter. A substantive due process violation, however, might be raised if the complainant shows "fundamental procedural irregularity, racial animus, or the like." Creative Environments v.Estabrook, 680 F. 2d 822, 833 (1st Cir. 1982). Such issues are questions of fact. Id. Questions of fact are outside the purview of an Attorney General Opinion. 74 O.S. Supp. 1998, §18b[74-18b](A)(5).
¶ 23 No case has been found applying substantive due process requirements to the passage of state legislation, and it is unlikely the courts would extend substantive due process to that area because of "great resistance to expand[ing] the substantive reach of those [due process] Clauses." Bowers v. Hardwick,478 U.S. 186, 195 (1986).
¶ 24 In view of this discussion, no rights of Oklahoma citizens generally would be violated by the Legislature's failure to read a bill at length prior to passage. Whether a particular right belonging to a legislator might be violated is not considered because of the separation of powers doctrine found at Article IV
of the Oklahoma Constitution. Under this doctrine, neither the executive nor the judicial branch may arrogate to itself control of the legislative branch. Jones v. Freeman, 146 P. 2d 564, 572
(Okla. 1943). The Legislature determines its own rules of procedure. Okla. Const. art. V, § 30. The courts cannot compel the Legislature to act in any certain manner in this area.Jones, 146 P. 2d at 572.
¶ 25 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. On consideration for final passage, a bill must be read ina meeting of the legislative house considering the proposal priorto the vote for final passage. Okla. Const. art. V, § 34. Thisreading may be accomplished either by someone reciting the bill'scontents orally from beginning to end, without omission, to theassembled house or by providing each member a copy of the bill toread for him — or herself prior to the vote on final passage.
 2. The Legislature does not have constitutional authority towaive the requirement at Article V, § 34 of the OklahomaConstitution that a bill be read at length prior to finalpassage.
 3. An Oklahoma court will not look behind an enactedlegislative bill so long as it is enrolled, signed by theLegislature's presiding officers, approved by the Governor, andfiled with the Secretary of State; therefore, failure to complywith the reading-at-length requirement will not invalidate astatute.
 4. The Legislature's failure to read a bill at length prior toits passage would not violate constitutional provisions ensuringdue process, equal protection, or a republican form ofgovernment.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
ANDREW TEVINGTON ASSISTANT ATTORNEY GENERAL
[1] The states with such a requirement and their constitutional provisions are California, Art. IV, § 8; Colorado, Art. V, § 20; Hawaii, Art. III, § 22; Illinois, Art. 4, § 8; Kentucky, § 46; Michigan, Art. IV, § 26; Missouri, Art. 3, § 24; Nebraska, Art. III, § 14; New Mexico, Art. IV, § 15; New York, Art. III, § 14; Ohio, Art. II, § 15 ¶ (C); Pennsylvania, Art. III, § 14; Virginia, Art. IV, § 11, ¶ (b); and Wyoming, Art. III, § 23.
[2] Those states and the constitutional provisions are Alabama, Art. IV, § 63; Alaska, Art. II, § 14; Arkansas, Art. V, § 22; Florida, Art. III, § 7; Georgia, Art. III, § V, ¶ VII; Indiana, Art. 4, § 18; Louisiana, Art. III, § 15, ¶ D; Mississippi, Art. 4, § 59; Nevada, Art. 4, § 18; New Jersey, Art. IV, § 4, ¶ 6; North Carolina, Art. II, § 22; North Dakota, Art. IV, § 13, ¶ 3; Oregon, Art. IV, § 19; South Carolina, Art. III, § 18; South Dakota, Art. III, § 17; Utah, Art. VI, §§ 22 and 24; and West Virginia, Art. VI, § 29.
[3] The mechanics of either alternative are left to the discretion of the Legislature as each house creates its own procedural rules. Okla. Const art. V, § 30.
[4] U.S. Const. Amend XIV, and Okla. Const art. II, § 7, and V, §§ 51 and 59.
[5] U.S. Const. Art. IV, § 4.
[6] U.S. Const. Amend. V and XIV, and Okla. Const. Art. II, §7.