## IN THE

# SUPREME COURT

### OF THE

## STATE OF IDAHO.

(August 27, 1912.)

## L. M. KELLEY, Respondent, v. C. K. CLARK, Appellant.

[129 Pac. 921.]

ACTION TO QUIET TITLE—EVIDENCE—SUFFICIENCY OF—MORTGAGE—FORE-CLOSURE SALE—REDEMPTION MONEY—TENDER OF—REFUSAL—EQUITY.

(Syllabus by the court.)

1. The evidence held sufficient to support the finding of fact that a legal tender was made for the purpose of redeeming the mortgaged property from foreclosure.

2. Under the provisions of sec. 4494, Rev. Codes, if the purchaser at a foreclosure sale refuses to accept a lawful tender of the redemption money, he does so at his own risk, and his refusal will not prevent the legal effect of the tender to defeat the sale and to extinguish the purchaser's interest in the mortgage lien. In such a case, the tender *ipso facto* discharges the mortgage lien, and is equivalent to payment of the mortgage debt so far as the mortgage lien is concerned; and the debtor is not required to keep the tender good, but the purchaser at such a sale is remitted to his action at law for the recovery of the money which still remains due on the mortgage debt provided the debtor refuses to pay it.

3. To hold that the tender must be kept good would completely nullify said provision of said section 4494, Rev. Codes, and inject therein a provision not contemplated by the legislature.

4. *Held*, under the facts of this case that the equities are with the plaintiff, and that the court did not err in quieting title in him.

(Ailshie, J., dissenting.)

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. John F. MacLane, Judge.

Action to quiet title to real estate.   Judgment for plaintiff. *Affirmed.*

Martin & Martin, B. F. Neal and Dean Driscoll, for Appellant.

In view of the serious consequences to an owner of a mortgage upon refusal of a tender, which may often amount to an absolute loss of the entire debt, and the strong temptation which must exist to contrive merely colorable and sham tenders not intended in good faith, the evidence should be so full, clear, and satisfactory as to leave no reasonable doubt that the tender was made.   (*Potts v. Plaisted,* 30 Mich. 149; *Proctor v. Robinson,* 35 Mich. 284; *Tuthill v. Morris,* 81 N. Y. 94; *Forrester v. Scoville,* 51 Mo. 268; *Marlowe v. Benagh,* 52 Ala. 112.)

Sec. 4494, Rev. Codes, calls for a tender of the money and not a written tender, and this section is a special provision, and the money must have actually been produced and tendered. (*Colton v. Oakland Sav. Bank,* 137 Cal. 376, 70 Pac. 225; *Hyams v. Bamberger,* 10 Utah, 3, 36 Pac. 202; *Ladd v. Mason,* 10 Or. 308; *Kuhns v. Chicago M. & St. P. Ry. Co.,* 65 Iowa, 528, 22 N. W. 661; 28 Am. & Eng. Ency. of Law, 531; *Doak v. Bruson,* 152 Cal. 17, 91 Pac. 1001.)

Good faith is a necessary element of the tender.   (*Leet v. Armbruster,* 147 Cal. 663, 77 Pac. 653; *Hyams v. Bamberger, supra;* 28 Am. & Eng. Ency. of Law, 31; *Moore v. Norman,* 52 Minn. 83, 53 N. W. 809, 38 Am. St. 526, 18 L. R. A. 359; *Mann v. Roberts,* 126 Wis. 142, 105 N. W. 785.)

The creditor is entitled to a reasonable time to determine whether he will refuse or accept the tender.   He should have reasonable time and opportunity to examine and determine the sufficiency of that which is tendered, and to ascertain his rights in the premises.   (28 Am. & Eng. Ency. of Law, 16, and cases cited.)

It is the rule undoubtedly that the tender discharges the security, but to produce such serious and heavy consequences the refusal must have been unqualified and unaccompanied by

any *bona fide* claim of right, which was supposed by the party to justify his refusal. (*Union Mut. Life Ins. Co. v. Union Mills Plaster Co.,* 37 Fed. 286, 3 L. R. A. 90.)

The statute has provided that a tender shall operate as a discharge or redemption. What the conditions of that tender should be is not provided by the statute, and it certainly cannot be allowed that the legislature meant to change in any way by the statute the rules of tender governing in either common law or in equity, and in equity such tenders must always be kept good. (28 Am. & Eng. Ency. of Law, 39, and cases cited; *Ruppel v. Missouri Guarantee etc. Assn.,* 158 Mo. 613, 59 S. W. 1000; *Landis v. Saxton,* 89 Mo. 375, 1 S. W. 359; *Werner v. Tuch,* 127 N. Y. 217, 27 N. E. 845, 24 Am. St. 443; *Shugart v. Pattee,* 37 Iowa, 422; *Murray v. O'Brien,* 56 Wash. 361, 105 Pac. 840, 28 L. R. A., N. S., 998.)

When the debtor seeks affirmative relief of an equitable nature, he must have kept his tender good, or at least come before the court in an attitude of willingness to pay what is due from him. (*Hole v. Van Duzer,* 11 Ida. 79, 81 Pac. 109; *Portneuf Lodge v. Western Sav. etc. Co.,* 6 Ida. 673, 59 Pac. 362; *Hall v. Arnott,* 80 Cal. 348, 22 Pac. 200.)

The refusal must have been unqualified and unaccompanied by any *bona fide* claim of right which was supposed by the party to justify his refusal. (*Waldron v. Murphy,* 40 Mich. 668; *Canfield v. Conkling,* 41 Mich. 371, 2 N. W. 191; *Gerdine v. Menage,* 41 Minn. 417, 43 N. W. 91; *Benson v. Bunting,* 127 Cal. 533, 59 Pac. 991, 78 Am. St. 81; *Myer v. Hart,* 40 Mich. 517, 29 Am. Rep. 553; *Lane v. Holmes,* 55 Minn. 379, 57 N. W. 132, 43 Am. St. 508; *Reynolds v. Price,* 88 S. C. 525, 71 S. E. 51; overruling *Salinas v. Ellis,* 26 S. C. 337, 2 S. E. 121.)

The lien of a mortgage will not be discharged because of the mortgagor's refusal to accept a tender of the mortgage debt where that refusal is under the mistaken and *bona fide* belief as to the mortgagor's legal rights, though refusal is without legal right. (*Crain v. McGoon,* 86 Ill. 431, 27 Am. Rep. 37; *Renard v. Clink,* 91 Mich. 1, 51 N. W. 692, 30 Am. St. 458.)

Alfred A. Fraser and Robert R. Wedekind, for Respondent.

Where there is a conflict in the evidence, the findings of the trial court will not be disturbed. (*Deeds v. Stephens,* 10 Ida. 332, 79 Pac. 77; *Robertson v. Moore,* 10 Ida. 115, 77 Pac. 218; *Abbott v. Reedy,* 9 Ida. 577, 75 Pac. 764; *Cowden v. Finney,* 9 Ida. 619, 75 Pac. 765; *Cowden v. Mills,* 9 Ida. 626, 75 Pac. 766.)

To effect a redemption from a mortgage it is not necessary for the mortgagor to tender, nor can the mortgagee demand, the payment of any debt or claim not included in and covered by the mortgage, although it be a just debt due from one to the other. (*Parmer v. Parmer,* 74 Ala. 285; *Veach v. Schaup,* 3 Iowa, 194; *Hays v. Cretin,* 102 Md. 695, 62 Atl. 1028, 4 L. R. A., N. S., 1039; *Weller v. Summers,* 82 Minn. 307, 84 N. W. 1022; *Bacon v. Cottrell,* 13 Minn. 194.)

The right of redemption is purely statutory, and it depends upon the construction of the statute as to whether or not the tender of the amount due releases the lien. Our statute bearing upon the subject is found in sec. 4494, Rev. Codes. This statute is taken from California, and has been construed by the supreme court of that state in a number of cases. The one distinguishing feature between this statute on redemption and the statutes generally enacted in other states is found in the last sentence, to wit: "And the tender of the money is equivalent to payment."

Sec. 4493, Rev. Codes, provides, among other things: "If the debtor redeem, the effect of the sale is terminated and he is restored to his estate."

The leading case in California construing these statutes is *Leet v. Armbruster,* 147 Cal. 663, 77 Pac. 653. See, also, *Hershey v. Dennis,* 53 Cal. 77; *Phillips v. Hagart,* 113 Cal. 552, 45 Pac. 843, 54 Am. St. 369; *Haile v. Smith,* 113 Cal. 656, 45 Pac. 872; *Bunting v. Haskell,* 152 Cal. 426, 93 Pac. 110; *Ball v. Stanley,* 5 Yerg. (Tenn.) 199, 26 Am. Dec. 263; *Salinas & Son v. Ellis,* 26 S. C. 337, 2 S. E. 121; *Mitchell v. Roberts,* 17 Fed. 779; *Moore v. Norman,* 43 Minn. 428, 45 N. W. 857, 19 Am. St. 247, 9 L. R. A. 55; *Flanders v. Cham-*

*berlain,* 24 Mich. 305; *Bartell v. Lope,* 6 Or. 321; *Mitchell v. Vermont Copper Co.,* 67 N. Y. 280; *Cass v. Higenbotam,* 100 N. Y. 248, 3 N. E. 189; *Balme v. Wambaugh,* 16 Minn. 116; *Nelson v. Loder,* 132 N. Y. 288, 30 N. E. 369; *Kortright v. Cady,* 21 N. Y. 343, 78 Am. Dec. 145; *Werner v. Tuck,* 127 N. Y. 217, 27 N. E. 845, 24 Am. St. 443; *Mitchell v. Roberts,* 17 Fed. 779; *Haynes v. Thom,* 28 N. H. 386; Jones on Mortgages, sec. 886; *Halpin v. Phoenix Ins. Co.,* 118 N. Y. 166, 23 N. E. 482.

SULLIVAN, J.—On August 10, 1909, the district court in and for Ada county entered a judgment and decree in favor of C. K. Clark for the sum of $3,131.34, and adjudged and decreed the foreclosure of a certain mortgage on real estate situated in Boise City and for the sale of the property in payment of the judgment. In pursuance of this judgment and decree, the property was sold on the 2d day of October, 1909, and was bid in by C. K. Clark, the plaintiff in that action, who is defendant and appellant in this action. The time for redemption of the premises expired on October 2, 1910.

The whole controversy involved in this appeal centers in the transactions which took place between the parties on September 30, 1910, which was two days before the expiration of the period of redemption. On October 4, 1910, the sheriff of Ada county executed and delivered to Clark, the purchaser at the foreclosure sale, a sheriff's deed to the property, and thereafter and on October 7th, Kelley commenced his action in the district court to quiet his title to the premises and secure a cancelation of the sheriff's deed. Judgment was entered in favor of the plaintiff and the defendant Clark appeals.

The property had originally belonged to, and the mortgage had been executed by, John I. Wells and wife. The foreclosure had been against Wells and wife. On September 30, 1910, Wells and wife executed and delivered a deed to the property in favor of L. M. Kelley. Kelley succeeded to all the rights of Wells and all subsequent proceedings were taken in Kelley's name. On September 30, 1910, and prior to the

execution of the deed from Wells to Kelley, Wells and his attorney met Clark on one of the streets in Boise City and gave Clark a written offer to redeem the property from the foreclosure sale. At Clark's request Wells and his attorney went with Clark to the office of his attorney. Here negotiations and conversations took place looking to a redemption of the property. There is a sharp conflict between the witnesses as to whether or not the money was actually in sight and tendered in payment of the mortgage. The court has found, however, that a tender was made, and the evidence is sufficient to sustain that finding. At the time this tender was made, Clark, acting under the advice of his attorney, declined to accept the payment unless Wells should also pay the amount due on a second mortgage which had been executed by Wells and wife in favor of C. P. McCarthy and B. S. Crow for the sum of $500 and which mortgage had been sold and assigned to Clark. No question was raised as to the existence of this $500 mortgage and the indebtedness thereby secured. It is admitted here that the mortgage did exist and that the debt existed. They refused, however, to pay this as a condition of redemption. The demand was made for the payment of this $500 mortgage under advice of Clark's counsel, who claimed that under the provisions of sec. 4492 of the Rev. Codes, which provides, among other things, that "if the purchaser be also a creditor having a prior lien to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest" must also be paid. The interview terminated, and thereupon Clark's attorney notified the sheriff of Ada county in writing not to accept the redemption money unless the redemptioner paid said $500 mortgage and interest thereon. It appears that Clark's attorney made further investigation in regard to the matter, and finally concluded that Clark was not entitled to demand the payment of the $500 mortgage as a condition precedent to or attendant on the redemption from the foreclosure sale. On the 30th day of September, 1910, and after said tender had been made, Wells and wife sold and conveyed said mortgaged real estate to the respondent Kelley. Thereafter,

on the same day, Clark's attorney called Kelley's attorney by phone and advised him that he would accept the tender and release the property, but Kelley's attorney declined and refused to renew the tender. Clark's attorney on the following day served written notice on Kelley's attorney that he was willing to accept the tender and release and reconvey the property. Kelley's counsel, however, refused to renew the tender, and thereafter, and subsequent to the expiration of the period of redemption, Clark procured a sheriff's deed to said property, and a few days thereafter Kelley commenced this action to quiet his title. No tender of payment was made when this action was commenced, and no tender has ever been made since that time. Kelley had taken the position, and was sustained therein by the trial court, that the refusal of Clark to accept the money when tendered *ipso facto* discharged said lien, and that the cloud thereon might be removed by a court of equity without any payment or tender of payment of the debt secured. This contention is based upon the provisions of sec. 4494, Rev. Codes. That section reads as follows:

"The payments mentioned in the last two sections may be made to the purchaser or redemptioner, or for him, to the officer who made the sale. When the judgment under which the sale has been made is payable in a specified kind of money or currency, payments must be made in the same kind of money or currency, and a tender of the money is equivalent to payment."

This case was first tried before Hon. Fremont Wood, judge of the third judicial district, and Judge Wood found that a tender was made by Wells through his attorney and was refused by Clark. He made the further finding, however, "That a controversy existed between said Clark and said Wells, and said tender was refused by the said Clark because of a claim put forward by him, and was not refused wantonly, nor said claim put forward by him as a cover to a wrong purpose, and said Clark acted in said matters in all respects in good faith," and entered judgment in favor of the defendant, refusing to quiet the title to said premises in the plaintiff.

A motion for a new trial was made, and in the meantime Judge Wood's term of office expired and the motion for a new trial was heard by Judge MacLane. A new trial was granted and the case was heard on the evidence previously taken and some minor evidence which was produced on the trial, and Judge MacLane found that a tender had been made and refused and the refusal to accept said tender was subsequently withdrawn. The refusal to accept the tender was based on the ground that the appellant had purchased said $500 mortgage on August 29, 1910, and that he would not accept said tender unless the debt represented by said $500 mortgage was paid. On the trial of the case before Judge MacLane, certain facts were stipulated, and it was stipulated that the question to be submitted to that court for decision was whether, under all the facts of the case, a valid tender of money was made, within the meaning and intent of sec. 4494, Rev. Codes, and other sections of the Idaho statutes, such as will discharge the lien of the defendant's judgment and make void the sheriff's deed issued to the defendant. The court in its findings of fact found that the time for redemption of said property from the sheriff's sale expired on October 2, 1910, and that the amount required to redeem the property was $3,798.-35; and that on September 30, 1910, the attorney for the mortgagor Wells tendered that sum to the defendant Clark in the presence of his attorney; that said Clark and his attorney refused to accept, and claimed at that time that they should receive in addition to said sum, the sum of $500 and interest thereon, being the amount of the mortgage executed by Wells and his wife to McCarthy and Crow, which mortgage had not at that time been foreclosed; that the plaintiff Kelley on September 30, 1910, purchased whatever interest Wells and his wife had in said property, and received a warranty deed therefor and succeeded to whatever right Wells acquired by virtue of the tender of redemption money; and as conclusions of law found that the plaintiff made a valid tender of the amount of money required to redeem said lots from said foreclosure sale, and that such tender was refused, and that the lien of the mortgage and the sale and the fore-

closure thereof was discharged thereby; that the plaintiff is the owner of the premises, free of the lien of said mortgage and the sale thereunder; that the deed from the sheriff to said defendant Clark dated on the 4th of October, covering the premises described in the complaint, is void and of no force and effect, and entered judgment and decree quieting the title to said lots or land in the plaintiff.

The appeal is from an order denying a new trial.

(1) Appellant's assignments of error may be considered under two heads: First, the insufficiency of the evidence to support the finding of facts to the effect that John I. Wells, through his attorney, made a tender to the appellant of the sum of $3,798.35 for the purpose of redeeming said property from sheriff's sale; second, that the court erred in making its first conclusion of law from the facts, to the effect that a valid tender of the amount required to redeem lot 4 in block 84 of the original townsite of Boise, Idaho, from the sheriff's sale of October 2, 1909, was made, and that such tender was refused by the defendant, and that the lien of the mortgage and of the sale on the foreclosure thereof was discharged thereby, and that the plaintiff is the owner of the premises, free from the lien of said mortgage and the sale thereunder.

The evidence clearly supports said finding of facts that said tender was made in proper time and for the sole purpose of redemption. The appellant Clark made no claim whatever at the time the tender was made that said tender was not sufficient to discharge the mortgage debt and costs of foreclosure; neither did he ask for any time to ascertain whether such sum was sufficient, but he did then and there demand the payment of said $500 debt secured by another mortgage on said premises, which mortgage and the debt secured thereby was purchased by the appellant on the 29th of August, 1910, more than thirty days prior to the time said tender was made, and he now contends that he was entitled to a reasonable time and opportunity to ascertain whether he was entitled to the payment of the last mentioned debt before a redemption could be made from said sheriff's sale. He thus had had about thirty days in which to determine his rights under said second mortgage.

We think the evidence is amply sufficient to sustain the finding of the court to the effect that a legal tender was made and refused.

(2) It is next contended that the court erred in concluding as a matter of law, that on the refusal of said tender the lien of the said first mortgage and the sale on the foreclosure thereof was fully discharged. The trial court no doubt based said conclusion of law upon the provisions of said sec. 4494, above quoted, which provides, among other things, that a tender of money by one entitled to redeem is equivalent to payment. Said section was adopted from the statutes of California. It was enacted by the legislature of that state in 1872 (see sec. 704, 3 Kerr's Cyc. Codes of Cal. and notes thereto), and was thereafter adopted by Idaho territory in 1874 (see 8th Terr. Sess. Laws, p. 140, sec. 254.), and our attention has not been called to a statute of any other state similar to said section. In *Hershey v. Dennis,* 53 Cal. 77, the court had under consideration said section of the California statutes, and there held that the tender of the redemption money extinguishes the purchaser's lien and is equivalent to payment.

In *Haile v. Smith,* 113 Cal. 656, 45 Pac. 872, the court held that "While the unaccepted tender did not release the defendant from his obligation to pay the money, it had the effect to release the land from any further claim thereto by the plaintiff and to remit the plaintiff to his personal claim for the money."

In the well-considered case of *Leet v. Armbruster,* 143 Cal. 663, 77 Pac. 653, the court held that if the purchaser refuses a lawful tender of the redemption money, he does so at his own risk, and his refusal cannot prevent the legal effect of the tender to defeat the sale and to extinguish the purchaser's interest in the mortgage lien; and the purchaser is remitted to his action at law for the recovery of the money which still remains due.

In that case the court reviewed many cases, and there laid down the correct rule applicable to the facts of this case. Of course, it goes without saying that the purchaser at a fore-

closure sale must have sufficient time to ascertain whether the amount of money tendered is sufficient to satisfy the debt, but he cannot evade the provisions of said sec. 4494 by refusing to accept the tender until he ascertains whether some other claim that he holds against the redemptioner must be paid at the time the tender is made.

In *Moore v. Norman,* 43 Minn. 428, 45 N. W. 857, 19 Am. St. 247, 9 L. R. A. 55, the court said: ''If the mortgagor does not tender the full amount due, the lien of the mortgage is not extinguished, and he runs no risk in accepting it. If, upon the other hand, it is sufficient in amount, his debt is paid, and that is all he has any right to demand. It is his own folly if he attempts to exact more. But, in view of the serious consequences which might possibly result from a refusal to accept such a tender, the proof should be clear that it was fairly made, deliberately and intentionally refused by the mortgagee; that sufficient opportunity was afforded to ascertain the amount due, and that a sum sufficient to cover the whole amount due was absolutely and unconditionally tendered.''

See, also, *Bunting v. Haskell,* 152 Cal. 426, 93 Pac. 110.

Those cases rest on the proposition that a tender *ipso facto* discharges the lien, and that proposition finds much support among the decisions of the courts of last resort. (*Ball v. Stanley,* 5 Yerg. (Tenn.) 199, 26 Am. Dec. 263; *Mitchell v. Roberts,* 17 Fed. 779; *Moore v. Norman,* 43 Minn. 428, 45 N. W. 857, 19 Am. St. 247, 9 L. R. A. 55; *Flanders v. Chamberlain,* 24 Mich. 305; *Bartel v. Lope,* 6 Or. 321; *Cass v. Higenbotam,* 100 N. Y. 248, 3 N. E. 189; *Kortright v. Cady,* 21 N. Y. 343, 78 Am. Dec. 145.)

It is stated in 1 Jones on Mortgages, sec. 893, as follows: ''The rule in several states, however, is that a tender of the amount due on a mortgage after the day fixed for payment is a discharge of the lien just as much as payment is, and in the same way that a tender at common law made upon the day named in the condition for payment has this effect. The lien of the mortgage is thereby *ipso facto* discharged, and

the holder of the mortgage can only look to the personal responsibility of the person liable for the mortgage debt.''

Referring to the principle under discussion, the court in *Merritt v. Lambert,* 7 Paige (N. Y.), 348, said: ''So that if the mortgagee is so unwise as to refuse his money when it is tendered at the time and place and in the manner prescribed in the instrument itself, he necessarily must lose his security upon the land which was merely collateral to the debt; although the mortgagor may be still liable for the money, where there is an existing indebtedness.''

In *Jackson v. Crafts,* 18 Johns. (N. Y.) 115, the court quotes the rule laid down by Lord Coke to the effect that ''if the mortgagor tender the money to the mortgagee and he refuseth, the land is freed forever from the condition, but yet the debt remaineth.''

Sec. 4492, Rev. Codes, provides what the judgment debtor or redemptioner must do to redeem the property from the purchaser at foreclosure or execution sale. Said Wells was the judgment debtor in the case at bar, and when he tendered the full amount due, as provided by said sec. 4492, that was a good and sufficient tender, and under the provisions of said sec. 4494 said tender was equivalent to payment, and *ipso facto* discharged the mortgage lien. The right of redemption is purely statutory, and the statute provides that in a redemption case the tender of the money is equivalent to payment.

Tender is the unconditional offer of a debtor to the creditor of the amount of his debt. This means the real amount of the debt as fixed by the law, and the purpose of the law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of encumbrance by offering his creditor all that he has any right to claim. This does not mean that the debtor must offer an amount beyond reasonable dispute, but it means the amount due,—actually due. Some of the decisions hold that tender must be kept good at least for a reasonable length of time such as would enable the creditor in good faith to ascertain and determine his rights both in fact and in law. Such a holding places the debtor at a great disadvantage, as the creditor might involve

him in prolonged litigation in order to determine some imaginary right, as, for instance, in the case at bar that holding would have required the debtor to have kept the tender good during an action to determine whether the creditor had the right to compel him to pay the debt secured by said $500 mortgage in order to redeem, thus compelling the debtor to employ counsel and go to the expense of a defense in an action which might be delayed for months and even years. Said sec. 4494 was adopted to protect the debtor from that kind of proceedings on the part of the creditor, and thus shield him from the rapacity of the creditor.

The case of *Mitchell v. Roberts,* 17 Fed. 779, is an instructive case upon the question here involved, although it involves the extinguishment of a lien on personal property pledged to secure payment. The court said:

"Upon this question there is no conflict in the authorities. The rule is settled that a tender of the debt, for which the property is pledged as security, extinguishes the lien, and the pledgor may recover the pledge, or its value, in any proper form of action, without keeping the tender good or bringing the money into court; because, like a tender of the mortgage debt on the law-day, the tender having once operated to discharge the lien it is gone forever. This rule accords with justice and fair dealing. It would be an exceeding great hardship on the debtor if the creditor had the right to refuse to accept payment of the debt after it was due, and at the same time retain the debtor's property or a lien upon it for the debt. Advantageous sales would be prevented, collections delayed, and credit lost by the inability of the debtor to free his property. In many cases debtors would be ruined before they could obtain relief by the slow process of a bill in equity to redeem. And on a bill to redeem a debtor would have to pay interest and costs down to the decree, unless he had kept the tender good. Thus the debtor, in order to protect himself against interest and costs, would be deprived of both his property and the use of his money at the pleasure of his creditor, or until the end of a chancery suit could be reached. On the other hand, a creditor who refuses

to receive payment of his debt when lawfully tendered, cannot complain at the loss of his security for that debt, 'because it shall be accounted his own folly that he refused the money when a lawful tender of it was made unto him.' ''.

The equities and fair dealing in this case, it seems to us, are all on the side of the debtor. The creditor did not question the amount of the tender, but had purchased a subsequent mortgage and debt secured thereby thirty days before the tender, and paid therefor $50, with the understanding that if he collected the whole amount due thereon he would pay to the mortgagee one-half of what he collected. He made this purchase with the evident purpose of making the debtor pay it, or at least harassing him with it by declining to accept said tender. This transaction seems unfair to us, and we believe it is just such transactions that induced the legislature to adopt said section 4494. It is unreasonable for the appellant to contend that he ought to have a reasonable time to determine whether he was entitled to collect said note and mortgage at the time of redemption, as he had already owned said note and mortgage more than thirty days prior to the tender. There is no equity shown on his behalf, and the provisions of said sec. 4494 ought to be given some force and effect in favor of the debtor for whose protection the section was enacted. The statute has declared that tender is "equivalent to payment," and under many well-considered cases it is held that upon tender the lien of the mortgage is thereby *ipso facto* discharged, and the holder of the mortgage can then only look to the personal responsibility of the person liable on the mortgage debt. It would completely nullify the provisions of said sec. 4494 to inject therein that in order to make tender "equivalent to payment" it must be kept good. Sec. 4492 provides that the debtor may redeem by payment, and sec. 4494 provides that tender is "equivalent to payment," and payment or its equivalent certainly discharges the lien. "Equivalent" is defined by lexicographers as "equal in value, force, measure, power and effect"; then "equivalent to payment," under that definition, would be "equal in power and effect" to payment.

The case of *Salinas v. Ellis,* 26 S. C. 337, 2 S. E. 121, is in accord with the views expressed in this opinion, but the supreme court of South Carolina in the case of *Reynolds v. Price,* 88 S. C. 525, 71 S. E. 51, by a divided court has overruled that case to a certain extent, and in our view of the matter the case of *Salinas v. Ellis* and the dissenting opinion in the Reynolds-Price case contain the better reasoning, and are in accord with the great weight of authority upon the question here involved. · However, the statute of South Carolina is not the same as said sec. 4494, Rev. Codes, which section provides that tender of the money is equivalent to payment, but nowhere provides that in order to be equivalent to payment the tender must be kept good. A legal tender kept good was equivalent to a payment before the adoption of said section, and now to hold under the provisions of said section that a tender must be kept good would be to declare that the enactment of said section accomplished no purpose whatever, and was a work of pure supererogation by the legislature. The legislature in enacting said section had no intention of requiring the tender to be kept good, for to require it to be kept good would be of no benefit to the debtor whatever, but a disadvantage in that he might be under the necessity of borrowing the money tendered and giving as security the identical land included in the foreclosure proceedings, and unless the lien of the former mortgage was discharged by the tender, the debtor would not be able to borrow money to keep the tender good, as the person loaning the money might not be willing to loan it, at least for any considerable length of time, unless he was given as security a first mortgage on such land. In order to make the provision of said section of any benefit whatever to the debtor, it must be construed in conformity with its plain provisions, to wit, that a tender is equivalent to payment, and, being so, *ipso facto* discharges the mortgage lien. To require a debtor to keep the tender good under the provisions of said section is contrary to its express provisions.

There is no question presented in this case in regard to the creditor's having reasonable time to compute the amount

of the indebtedness due for redemption, and, as before stated, he had purchased said $500 note secured by mortgage more than a month before said tender was made, no doubt with the express purpose of compelling the debtor to pay it before he would permit him to redeem, and he ought not to be assisted in that purpose by this court by reading something into said section that is not there and was never intended by the legislature to be there.

It appears that the debtor had borrowed the money with which to make the redemption, and upon the refusal to accept the tender may have been placed in a position where he would have had to return the money in case the tender was refused, and might not have been able thereafter to borrow money for redemption. The creditor refused payment of his debt, which was lawfully tendered, and he cannot justly complain at the loss of his security for that debt "because it shall be accounted to his own folly that he refused the money when a lawful tender was made unto him."

(3) It is next contended that one who asks equity must do equity, and that under that rule respondent must pay the amount due on the Wells mortgage foreclosure decree before a court of equity will quiet the title in the respondent. There is nothing in the record to show that respondent owes that debt. If respondent does not owe the debt, why should he pay it? Would it be equitable to require him to do so? The record shows that Wells owes the debt, and since the statute has made a legal tender by a mortgagor redemptioner, equivalent to payment, and thereby discharged the lien, why should a court of equity compel a subsequent purchaser of said real estate to pay the debt of his grantor when the mortgage lien had been already discharged by the tender made before respondent purchased the property? The sheriff's deed was issued subsequent to the purchase made by the respondent Kelley, and the sheriff, without any authority of law whatever, executed the deed that now casts a cloud upon said title. The wrongful act of the sheriff created the cloud, as the lien was discharged *ipso facto* by the tender. Unless the plaintiff in this action owes said debt, a court of equity

has no authority to require him to pay it before it will clear the title from the cloud cast upon it by the unauthorized conveyance executed by the sheriff. The unauthorized act of the sheriff was brought about by the appellant himself because of his refusal to accept said tender, and therefore the equities are with the respondent and not with the appellant. A different question would be presented if the mortgagor Wells had brought this action to quiet title in himself. Said contention of counsel is without merit.

The court, therefore, did not err in concluding as a conclusion of law from said findings that on the refusal of the appellant to accept said tender the lien of the mortgage and the lien created by the judgment on the foreclosure thereof were fully discharged. The judgment of the trial court must be affirmed, and it is so ordered, with costs in favor of the respondent.

Stewart, C. J., concurs.

AILSHIE, J., Dissenting.—The conclusion reached by my associates in this case goes so wide of what seems to me to be justice and equity that I feel constrained to express my views in the matter.

Stripped of all disguise, the case involves the question, pure and simple, of the respondent avoiding the payment of a debt aggregating $3,798.35. Under the decision reached by the majority of this court, respondent will be successful in this attempt, and by solemn decree of court will be enabled to defeat the collection of this sum of money. I shall not attempt to make any additional statement of facts in the case except as in the course of the discussion I may deem it necessary to a clear understanding of my position to restate some of the facts or state some additional fact not embodied in the majority opinion.

In the very outset, let it be understood that the law question here involved is not whether a tender made under sec. 4494, Rev. Codes, shall be kept good from that time on, but the important question here is rather the facts and circum-

stances under which a tender is made and the good faith and square dealing involved therein. Sec. 4493, of the Rev. Codes, prescribes the order of redemption and the manner in which it takes place. It also provides that "upon a redemption by the debtor the person to whom the payment is made must execute and deliver to him a certificate of redemption," etc. Sec. 4491 prescribes who may redeem; first, the judgment debtor or his successor in interest, and, second, a creditor having a lien on the property subsequent to that on which the property was sold. These provisions of the statute have reference to the payment of a debt or the tender of payment *after a foreclosure and sale,* and these sections have no reference to the payment of the debt before judgment or before sale. We are not here dealing with the common-law right of redemption at maturity or on the "law-day." We are dealing with statutory provisions governing redemption *after sale.* When respondent and his attorney went to the appellant and proposed to redeem the property from the foreclosure sale which had been made, the appellant consulted his attorney, Mr. Neal, and advised his attorney that he also held a second mortgage on this property for the sum of $500. Mr. Neal, acting as attorney for appellant, advised him that under the provisions of sec. 4492 of the Rev. Codes, the respondent was seeking to redeem as a redemptioner, and that before appellant would be required to make a certificate of redemption as provided by sec. 4493, respondent must also pay the amount of the $500 second mortgage lien. Appellant accordingly demanded the payment of this sum before releasing the security held by him. Respondent and his attorney declined to pay this additional claim and went away, and appellant's attorney apparently investigated the matter further, and after examining the statute and authorities concluded that he was in error in the advice he had given his client, and informed him that he could not demand payment of the $500 mortgage as a prerequisite to releasing the property from the foreclosure sale, and on the *afternoon of the same day* notified respondent's attorney that they would accept the tender, and was met by the reply that he was too

late and that "there was nothing doing." *On the following morning* counsel for appellant *executed the proper certificate of redemption* and acknowledged the same, and went to the office of respondent's attorney and handed it to him and offered to accept the payment. Respondent's attorney says: "I looked it over and handed it back, and said there was nothing doing."

There is even a direct conflict in the evidence as to whether any payment was tendered or any money was in sight, and appellant's counsel testifies that payment was not refused but that, as he understood it, the matter was left open until he could have time to further investigate the question as to whether his client was entitled to have the second mortgage paid as a condition of redemption under secs. 4492 and 4493 of the Rev. Codes. Now, in the face of all these facts, my associates suggest that the appellant was acting unfairly and was endeavoring to oppress and harass the respondent. They even seem to think there was something wrong, inequitable or unjust about the appellant urging that respondent pay an honest debt, the justice of which he did not question. Since when, I ask, has it become unfair, oppressive or wrongful for a creditor in Idaho to urge that his debtor pay an honest debt overdue? Why should he be mulcted out of his security for a debt approximating $4,000 because he has urged his debtor to pay an additional debt he owes? And, I may further ask, since when has it become inequitable or unjust for a creditor to purchase an additional claim against his debtor? By reverting to the legal phase of this case, we discover that Judge Wood upon the original trial found "that a controversy existed between said Clark and said Wells, and said tender was refused by said Clark because of a claim put forward by him, and was not refused wantonly, nor said claim put forward by him as a cover to a wrong purpose, and said Clark acted in said matters in all respects in good faith." Judge MacLane, on the second trial, did not reverse or disturb this finding nor has he made any finding in conflict therewith. On the contrary, it is admitted that the foregoing finding by Judge Wood is in fact true and correct.

The witnesses for respondent testified to facts which show this to be unmistakably true. Now, in the face of these facts, can it be said, either as a matter of law or in good conscience, that this so-called tender was *a straightforward good faith tender* where the creditor, within less than ten hours thereafter, on discovering his mistake and being so advised by his attorney, notified the debtor that he would accept the tender and execute the release and certificate of redemption?

As above stated, there is no occasion in this case for considering or discussing the question as to whether a tender under our statute must be kept good until a suit to remove cloud and quiet title can be prosecuted, and I shall not attempt to discuss that question at this juncture. The only question here involved is the rule applicable to a tender and the good faith of the transaction. I shall first briefly address myself to some of the cases cited in the majority opinion.

In the first place, I may say,—and a reading of the decisions will amply justify me in it,—that not a single case cited in support of the majority opinion deals with the question here directly involved or is parallel with the facts of this case. *Hershey v. Dennis,* 53 Cal. 77, the first California case relied on by my associates, was an *ejectment* case, and does not touch the question here involved, nor does it cite or consider the California statute corresponding with our sec. 4494. The syllabus to the case was not written by the court, but rather by the reporter, and does not correspond with the opinion itself.

*Haile v. Smith,* 113 Cal. 656, 45 Pac. 872, was another suit in *ejectment,* and involved the construction of a contract to sell real estate and a specific performance thereof and a tender of payment provided for in the contract. It in no sense or particular deals with or cites the statute here under consideration, nor was any such question presented to the court in that case.

*Leet v. Armbruster,* 143 Cal. 663, 77 Pac. 653, was also an action in *ejectment,* and the question there involved and considered was the necessity for keeping a tender good under

the provisions of sec. 704 of the Code of Civil Procedure of California. No question whatever arose as to the good faith of the tender or the grounds of the refusal of the tender or the good faith on the part of the creditor in refusing to accept the tender. No discussion whatever was had in that case of the important question of good faith, either in making the tender or in refusal to accept, that is here involved.

*Mitchell v. Roberts,* 17 Fed. 779, discusses the same question considered in *Leet v. Armbruster,* and in no way touches upon the good faith of the tender or the good faith of the refusal. That case, however, was dealing with a pledge of personal property instead of a mortgage on real estate, and the judge who wrote the opinion premised his discussion by pointing out the difference between the two, and showing that in a pledge of personal property the pledgee holds the possession, and that in such case an action might be maintained for the possession of the property as soon as a valid and legal tender has been made.

I shall not pursue an analysis of the cases cited further than to say that an examination of the remaining citations will disclose that they were each dealing with pledges of personal property or with common-law tenders, and that none of them was dealing with the statutory redemption from foreclosure, nor were they dealing with a question of good faith and *bona fides* on the part of either the debtor or creditor. So I dismiss the authorities cited in support of the majority opinion with the assertion that not a single one of them deals with or supports the doctrine enunciated by my associates.

I am not, however, without authority on the direct question involved in this case, and that, too, from modern, eminent and respectable jurists.

As late as May, 1911, the supreme court of South Carolina, in *Reynolds v. Price,* 88 S. C. 525, 71 S. E. 51, had before it a case involving a state of facts parallel with the case at bar. In that case a tender was made and the creditor demanded the sum of $2, which he called a renewal fee, for extending the time of the payment of the loan, and the sum of $10 as attorney's fee for preparing summons and com-

plaint in foreclosure which had not yet been filed or served. Some days thereafter the creditor concluded that he would waive the demand for the $2 renewal fee and the $10 attorney's fee, and accordingly went to the debtor and so notified him and offered to accept the sum tendered. The debtor refused to make the payment or make good the tender, and claimed that the security had been discharged. The creditor commenced his action to foreclose the mortgage. The trial court, upon the authority of *Salinas v. Ellis,* 26 S. C. 337, 2 S. E. 121, held that the lien of the mortgage was discharged by the tender and entered judgment accordingly. The creditor appealed, and the supreme court of South Carolina considered this question at length, and with a keen sense of justice and equity reached the conclusion that the refusal to accept the tender had been made in good faith and without any purpose to wrong, oppress or injure the debtor, and that the security was not discharged. The court there said: "If a mortgagee refuses a tender, not arbitrarily or for a wrongful purpose, but in good faith, under the honest belief, based upon reasonable grounds, that more is due him than has been tendered, refusal of the tender will not operate to discharge his lien." The court thereupon quotes from the note to *Parker v. Beasley,* 33 L. R. A. 231, as follows: "In all the states the tender must be absolute and unconditional, and the mortgagee must be given a reasonable time to compute the amount due in order to discharge the lien, and if he refuses the tender in good faith, even though the tender is sufficient, the lien will not be discharged." The court also quotes from *Union Mutual Life Ins. Co. v. Union Mills Plaster Co.,* 37 Fed. 286, 3 L. R. A. 90, the following:

"But to produce such serious and heavy consequence the refusal must have been unqualified, and unaccompanied by any *bona fide* claim of right, which was supposed by the party to justify his refusal. The claim of right may have been one that could not be supported as matter of law; still if it was believed in, and was not wantonly put forward as a cover to a wrong purpose, it is sufficient to prevent the forfeiture of the security."

The court then proceeds to state the real question before it in that case as follows: "The question, therefore, is not whether the plaintiff's claim to the renewal and attorney's fee can be sustained in law, but, rather, whether it was made in good faith. The testimony shows that it was." Upon this finding of fact, the court reaches the conclusion which it says is unavoidable in equity, that the lien was not discharged by a tender made under such circumstances. A dissenting opinion was filed in that case to which Justice Sullivan refers as being the sounder and better rule. It is perhaps to be regretted that a dissenting opinion must sometimes state the safer and more modern rule of law,—and I am fully persuaded that will be true in this case,—but unfortunately the dissenting judge in the Reynolds case insisted on standing on the ancient rule of "an eye for an eye," instead of the modern and more humane rules of equity and good conscience. The dissenting opinion there insisted on cutting the creditor off and sweeping away his security irrespective of the question of good faith and fair dealing.

The majority have quoted at length from the opinion of the federal district judge reported in 17 Fed. 779, dealing with the straight question of the effect of a tender. I find the question, however, involved in the present case considered in 37 Fed. 286, 3 L. R. A. 90, in the case of *Union Mutual Life Ins. Co. v. Union Mills Plaster Co.,* wherein another federal district judge holds that a refusal to accept the tender under a *bona fide* claim of right does not extinguish the lien. The court said:

"But to produce such serious and heavy consequence the refusal must have been unqualified, and unaccompanied by any *bona fide* claim of right, which was supposed by the party to justify his refusal. The claim of right may have been one that could not be supported as matter of law; still, if it was believed in, and was not wantonly put forward as a cover to a wrong purpose, it is sufficient to prevent the forfeiture of the security. So, here, while it is clear enough that the complainant had no right to make it a condition of receiving payment, that the defendant should enter into stipu-

lations about making repairs on the mortgaged property, still it may have been that it thought it had such right, and I do not find such evidence of its bad faith in this regard as to justify a declaration of forfeiture.''

The majority opinion in this case holds that it would be inequitable and unjust to require the debtor to keep the tender good ''for a reasonable length of time such as would enable the creditor in good faith to ascertain and determine his rights both in fact and in law.'' That contention on the part of my associates strikes me as both remarkable and alarming. I confess that no authority whatever has been called to my attention which goes to any such length or intimates such a doctrine. Mr. Jones, in his work on Mortgages, sec. 893 (6th ed.), says: ''If a mortgagee acting in good faith refuses a tender through a mistake as to his legal rights, the lien of the mortgage is not discharged''; and again, in the same section, the author says: ''One designing to make a tender with the purpose of insisting, in case of refusal, that the mortgage lien is discharged, is bound to act in a straightforward way and distinctly and fairly make known his true purpose without mystery or ambiguity, and allow reasonable opportunity for intelligent action by the holder of the mortgage.'' The same doctrine is clearly and tersely stated by the supreme court of Michigan in *Renard v. Klink*, 91 Mich. 1, 51 N. W. 692, 30 Am. St. 458. Judge Black, in his text on Mortgages, at 27 Cyc. 1406, says: ''A tender of payment or performance of a mortgage, to be effective, must be open, fair and reasonable, so clear and explicit as to leave no doubt of the intention to satisfy and discharge the mortgage. . . . .'' (See, also, 20 Am. & Eng. Ency. 1062.)

In the case at bar, at the time the alleged tender was made no intimation was given that the debtor intended to rely on the tender so made as discharging the security, nor was it intimated that the respondent meant to rely on the tender thus made as a discharge *ipso facto* of the security. The authorities are all agreed, so far as I have been able to find, that the proof should be clear and unmistakable that the

tender was made, and that where there is any doubt about it the security will not be discharged. In the present case, it is proposed by this court to wipe away the security on a conflict of evidence, and where the very best that can be said for the tender is that it was open to doubt and the debtor refused to keep it good for a period of ten hours. It is held by the majority of the court that a tender *ipso facto* releases and discharges the security, and a number of authorities use that language. This language, however, is used only in cases where no dispute or controversy arises as to the fact of the tender actually being made, and its good faith and the absolute and unqualified refusal of the creditor to accept the tender. *No such language is used by the courts in cases where the good faith of either party is involved.* Now, it is clear and needs no legal argument or discussion to fully disclose that the facts which constitute a valid *bona fide* tender must necessarily cover some perceptible period of time, and that will necessarily vary in different cases. So, also, will the matter of acceptance or refusal necessarily involve a perceptible period of time, and the intelligent exercise of the right to reject or accept must necessarily occupy a space of time differing in different cases. In one case the party may have to go to the county seat and consult the judgment itself in order to ascertain the amount of principal, interest and penalties, or he may have to do more than that. He may have to secure someone to make the necessary computations for him. In another case, he may have to ascertain his legal rights in the premises as to the amount he is entitled to demand or whether he holds other encumbrances or claims against the property which are prior to the claim of the redemptioner. This may, and often will, necessitate consulting a lawyer and obtaining legal advice as to his rights, and this will take time. Surely no one would be so obtuse and deaf to the claims of equity and fair dealing as to deny the creditor the right to a sufficient length of time to inform himself either as to the facts or the law involved in the transaction and on which his demands must rest. In this case there was no controversy between the parties as to the facts. There

was no difference between them as to the amount of money due on the foreclosure sale, but there was a *bona fide* controversy between them as to whether or not the respondent fell within the provisions of sec. 4492, and was obliged to pay to the appellant the amount of the other mortgage that he held against the same property as a condition precedent to redemption under the provisions of sec. 4493. Appellant was not a lawyer, and did not know what his legal rights were in the matter. He did the best thing he knew,—consulted his attorney, a man holding a license from this court to practice law and advise a citizen as to his legal rights in matters arising under the laws of this state. In the face of this state of facts, this court solemnly says that the appellant did not act in good faith, that he was endeavoring to oppress and harass his debtor, and that a court of equity will not protect him in acting upon the advice of his attorney, but will with one fell swoop wipe out the security he holds for a $3,700 debt. This, to my mind, demonstrates the truth of the current maxim that "Everybody is expected to know the law except lawyers and judges." The appellant, although presumed in law to know the law, did not know it and consulted his attorney, and apparently his attorney did not know the law and wrongly advised him, but as soon as he did ascertain his mistake he advised the appellant of the mistake, and also advised the respondent that they would accept the tender which they claim had been made only a few hours before. Although he had owned the second mortgage for some thirty days, he had no notice that a tender would be made until the alleged tender was made, and so he had no previous occasion to investigate his legal rights in the matter.

It is everywhere held that either debtor or creditor may be relieved and the time be extended by a court of equity on account of mistake, fraud or other circumstances appealing to the discretion of a court of equity. (*Bunting v. Haskell,* 152 Cal. 426, 93 Pac. 110.)

My associates tell appellant that although his security is wiped away, and in the meanwhile the property held as se-

curity has been sold to a third party, nevertheless the naked debt still exists.    This may afford a balm to his lacerated sense of justice, but it will prove a very poor boon to his ravished purse when he discovers that under the provisions of the statutes of this state, sec. 4520, there can be "but one action for the recovery of any debt or the enforcement of any rights secured by mortgage upon real estate," which action must be in accordance with the provisions of the statute for the foreclosure of mortgages.    Another thing: he will discover that his judgment has been satisfied, that the property has been sold for the amount of the judgment and that the sheriff has made his returns and the judgment is satisfied of record. His security is gone, and, under the statute, he has no cause of action left.

My associates have construed sec. 4494 in the light of an old common-law rule which prevailed before these statutes were enacted, but that rule had no reference to redemption *after* sale on foreclosure.    It had reference solely to the payment of the debt on the day of maturity, which was known at common law as the "law-day" for the debt.    (*Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A., N. S., 998.) Our statute says, however, that "a tender of the money is equivalent to payment," not merely equivalent to a discharge of the security, but equivalent to "payment" of the debt.    I call attention to this simply as an illustration of the futility of a court sweeping away the creditor's security merely because he has been ill advised or has made a mistake in believing himself entitled to demand, as a condition of redemption, the payment of a second lien against the property and then trying to console him by telling him that the debtor, though a bankrupt he may be, is still indebted to him.

There is another aspect to this case which should not be passed over lightly, and in which this case differs from the cases cited in support of the majority opinion.    Here the respondent came into a court of equity and sought to have his title quieted and the cloud upon his property caused by the foreclosure sale removed, at the same time admitting his indebtedness and refusing to pay the same and making no offer

or tender whatever into court. So far as I am aware, the authorities are well-nigh, if not entirely, unanimous in holding that although a lien for some legal cause or other cannot be enforced, still a court of equity will not interpose to remove the cloud cast by such lien unless the debtor does equity and pays or offers to pay the debt. Those who seek the aid of a court of equity must themselves do equity, whether the cold letter of the law lays any obligation upon them or not. The fact that one's adversary has done him a wrong or an injury even, or some act which has resulted in a hardship, does not justify a court of equity in sanctioning another or like wrong and injustice being done to the offending party.

In *Tarr v. Western Loan & Savings Bank,* 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707, this court in a suit in equity declined to cancel a mortgage and remove the cloud cast by the same from the property where the debt had not been paid, although the court at the same time declined to give the lender a judgment and decree of foreclosure because it had failed to comply with the foreign corporation laws of this state. This was done upon the principle that one who is seeking an inequitable and unconscionable advantage over his adversary will be left in *statu quo* or granted no relief by a court of equity until such time as he himself offers to do equity. (For a holding to same effect, see *New York & C. B. & L. Assn. v. Cannon,* 99 Tenn. 345, 41 S. W. 1054.)

Jones in his work on Mortgages, at sec. 893, in considering the effect of a tender upon the mortgage security, says: "But even if a sufficient tender be made out, the mortgagor cannot come into a court of equity to have the mortgage decreed to be surrendered or extinguished, without paying the amount equitably due under it." The author then proceeds with the proposition that the rule with reference to a sufficient tender extinguishing the mortgage lien is limited in its operation to defenses to the enforcement of the mortgage. "It does not," says the author, "avail a mortgagor who seeks a discharge of his mortgage; for when he seeks relief in a court of equity he must do equity, and must pay the mortgage debt. The tender then avails merely to stop the interest and

not to discharge the debt." In support of the foregoing text, the author cites *Tuthill v. Morris,* 81 N. Y. 94, in which the court says: "A party coming into equity for affirmative relief must himself do equity, and this would require that he pay the debt secured by the mortgage and the costs and interest, at least up to the time of the tender. There can be no pretense of any equity in depriving the creditor of his security for his entire debt, by way of penalty for having declined to receive payment when offered."

It has likewise been repeatedly held that even though the statute of limitations has run against a debt secured by mortgage, a court of equity will not grant a decree canceling the mortgage and removing the cloud from the debtor's title, unless he pays the debt or tenders payment into court.

In *Hall v. Hooper,* 47 Neb. 111, 66 N. W. 33, the Nebraska supreme court said: "A mortgagor, in order to remove the cloud cast upon his title by a sheriff's deed, executed in pursuance of a void foreclosure, must offer to pay what is equitably due under the mortgage," and this though the statute of limitations has barred the right to foreclose on the mortgage. To the same effect, see *Michigan Trust Co. v. Frymark,* 76 Neb. 634, 107 N. W. 760; *Henry v. Henry,* 73 Neb. 746, 107 N. W. 789; *New York etc. Assn. v. Cannon,* 99 Tenn. 344, 41 S. W. 1054; 28 Am. & Eng. Ency. of Law, 39; *Werner v. Tuch,* 127 N. Y. 217, 27 N. E. 845, 24 Am. St. 443 (holding tender not good for affirmative relief in equity) ; *Ruppel v. Missouri Guarantee Assn.,* 158 Mo. 613, 59 S. W. 1000; *Hall v. Arnott,* 80 Cal. 348, 22 Pac. 200; *Murray v. O'Brien,* 56 Wash. 361, 105 Pac. 840, 28 L. R. A., N. S., 998 (holding that a tender will not entitle the debtor to have the cloud cast by the mortgage removed without an offer to pay into court).

I opine it would be difficult to find an authority sustaining the position that a debtor can have relief by way of removing the cloud cast upon his property by a mortgage or other lien where he admits the *bona fide* existence of the debt and refuses to make the payment.

From the foregoing considerations, I cannot escape the following conclusions:

First: That the tender made by the respondent in this case was not a *bona fide*, straightforward tender of payment within the contemplation of the statute, for the reason that it was not kept good for a sufficient length of time to enable the appellant to in good faith determine his rights and accept or refuse the tender.

Second: That the appellant acted honestly, fairly and in good faith when he procured the advice of his counsel, and, acting upon that advice, declined to accept the tender unless the second mortgage held by him was also paid.

Third: That the tender meant and intended by the provisions of sec. 4494 is a fair and straightforward offer to pay the amount when due with a present ability to make the payment in cash or in the specified kind of money or currency in which the judgment is made payable, and that this tender must be kept good for such a reasonable length of time as will enable the creditor in good faith to ascertain and determine his rights both in fact and in law.

Fourth: That a tender of payment under sec. 4494, Rev. Codes, cannot afford a foreclosure debtor an affirmative cause of action in a court of equity to remove the cloud from the property cast by the sale unless he pays or offers to pay the debt secured thereby.

Fifth: That those who seek the aid of a court of equity must themselves do equity, and that it would be inequitable and unjust, and a recognition of dishonesty, for a court of equity to cancel and remove the cloud from the debtor's property on the grounds that he had tendered payment where he refuses to make the tender good or to pay the debt which he admits is justly and honestly owing.

The foregoing are some of the salient reasons why I dissent from the majority opinion and believe that the judgment of the trial court should be reversed.

### ON REHEARING.

(February 10, 1913.)

ACTION TO QUIET TITLE—REDEMPTION MONEY—TENDER OF.

 1. *Held,* under the facts of this case that the refusal to accept the redemption money tendered was withdrawn and the offer to accept the same was made so soon after the refusal that in equity it should have been accepted.

 2. He who seeks equity should do equity.

SULLIVAN, J.—The original opinion in this case was handed down August 27, 1912. Thereafter a rehearing was granted and the cause has been reargued and resubmitted for decision.

The writer of this opinion prepared the former opinion, and he does not intend by anything said in this opinion to change the views expressed in the former opinion in regard to the construction placed upon sec. 4494, Rev. Codes, but we have concluded that since this is an equitable suit to quiet title, and as it appears from the record that the refusal to accept said tender was withdrawn within a very few hours after the tender was made, and that the redemption money was available at the time of the withdrawal of said refusal to accept the tender, it is only equitable and right to require the judgment debtor or his assignee to pay to the proper party the amount of money so tendered. One of the best established rules of equity is that he who seeks equity must do equity, and we think it only equitable, upon a review of all the evidence in this case, that the plaintiff or his grantor be required to pay to the defendant, or his assignee, the amount of money tendered for the redemption of the property, before a redemption can be made. If said money be not paid to the defendant or his assignee within thirty days from the date of this opinion, whatever title was procured at said foreclosure sale shall be quieted in the defendant.

The cause is remanded, with instructions to make findings and enter decree in accordance with the views expressed in this opinion, each party to pay his own costs on this appeal.

Stewart, J., concurs.

AILSHIE, C. J.—I concur in the judgment and order entered, and still adhere to the views expressed by me in my dissenting opinion filed upon the original hearing.